[Civ. No. 30439. First Dist., Div. Four. Sept. 12, 1972.]

L. E. ALFORD et al., Plaintiffs and Appellants, v.
ANTHONY R. PIERNO, as Commissioner, etc.,
Defendant and Respondent;
MARCOM, INC., Real Party in Interest and Respondent.

**COUNSEL**

Weiss & Wald and Robert B. Freedman for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, and Mervin R. Samuel, Deputy Attorney General, for Defendant and Respondent.

Thelen, Marrin, Johnson & Bridges and Fielding H. Lane for Real Party in Interest and Respondent.

**OPINION**

**BRAY, J.**\*—Plaintiffs and appellants appeal from an order and judgment denying their petition for writ of mandamus.

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

## Questions Presented

1. May a curative permit, pursuant to Corporations Code section 25802, be issued to a corporation in process of dissolution?

2. Did respondents' findings support the judgment?

3. Did granting of the curative permit work a fraud on appellants?

4. Did the trial court err in denying findings of fact and conclusions of law?

## Record

On August 10, 1970 plaintiffs filed in Alameda County Superior Court a petition for writ of mandamus ordering defendant Commissioner of Corporations to set aside his decision granting real party in interest, Marcom, Inc. (hereinafter, Marcom) the curative permit hereinafter discussed. At the hearing in the trial court, plaintiffs moved for an extension of time to obtain a transcript of the proceedings before the Commissioner of Corporations. The motion was denied. Plaintiffs' request for findings of fact and conclusions of law was first granted and then the order granting was vacated and the request denied. Order and judgment was entered denying the petition for peremptory writ of mandamus.

## Facts

Marcom was incorporated in the State of California on September 17, 1962. Its business was the manufacture and sale of a device operated in connection with the telephone and known as a "call diverter."

A total of 238 shares of stock was issued in contravention of Marcom's permit issued by the commissioner, in that such shares were issued for cancellation of prior indebtedness rather than for cash as required by the permit. In addition, Marcom issued a total of 14 additional shares to two of the plaintiffs without any permit whatsoever.

On April 18, 1969 Marcom entered into an agreement with Ford Industries whereby Ford agreed to buy all of the assets from Marcom to be liquidated.

On June 27, 1969 an action was filed in the Superior Court of Alameda County, whereby plaintiffs sought to recover the consideration paid by them to Marcom on the grounds that the issuance of the aforementioned stock was either without permit or in contravention of the terms of the existing permit.

Thereafter, Marcom obtained an order from the Superior Court of the City and County of San Francisco, whereby that court assumed judicial supervision of the windup of Marcom's corporate affairs subsequent to Marcom's filing of a Certificate of Election to Wind-Up and Dissolve with the California Secretary of State on June 6, 1969.

On January 16, 1970 Marcom filed an amended application for a curative permit authorizing the sale and issuance of securities previously sold and issued without a permit or in nonconformity with the permit previously obtained.

On June 3, 1970 the commissioner issued his decision adopting the proposed decision of the hearing officer, which recommended the requested curative permit be granted.

On August 10, 1970 plaintiffs filed in the Alameda County Superior Court this petition for writ of mandate ordering the commissioner to set aside the issuance of the curative permit.

At the hearing before the trial court, plaintiffs stated that application for relief was based on the ground that the findings were not supported by the record, and asked for time to obtain the necessary funds for a transcript of the proceedings before the hearing officer. On the ground that plaintiffs had already been given reasonable time for that purpose, the court denied the request. The matter was then heard on the findings of the Corporations Commissioner, plaintiffs contending that the findings did not support the commissioner's decision granting the curative permit.

1. *A curative permit may be issued to a corporation in the process of dissolution.*

Corporations Code section 25802 provides: "Upon application in accordance with this division, the commissioner may issue a curative permit authorizing the issuance and sale of any security previously issued or sold without a permit, or in nonconformity with any provision of a permit previously obtained. The commissioner shall issue a curative permit only if he finds that the plan of business of applicant and the issuance of the curative permit are fair, just, and equitable and that the applicant is transacting and intends to transact its business fairly and honestly and that in his opinion the issuance of the curative permit will not work a fraud upon the holders of any of the issued and outstanding securities of applicant."

Plaintiffs contend that while engaged in dissolution and windup of its corporate affairs, Marcom was not transacting or intending to transact business and thus is not entitled to the relief provided by section 25802.

There is no case law interpreting Corporations Code section 25802. Consequently, this is a case of first impression necessitating an interpretation and construction of the aforementioned statute.

■ One of the cardinal rules of construction requires that words be given such interpretation as will promote rather than defeat the *general purpose and policy* of the law. (*City of L. A.* v. *Pac. Tel. & Tel. Co.* (1958) 164 Cal.App.2d 253, 256 [330 P.2d 888].) ■ A statute should be interpreted so as to produce a result that is reasonable. (*Ivens* v. *Simon* (1963) 212 Cal.App.2d 177, 181 [27 Cal.Rptr. 801].) If two constructions are possible, that which leads to the more reasonable result should be adopted. (*In re Kernan* (1966) 242 Cal.App.2d 488, 491 [51 Cal.Rptr. 515].)

■ In construing a statute, the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) ■ The courts must look to the context of the law, and where uncertainty exists, consideration should be given to the consequences that will flow from a particular interpretation. (*Ivens* v. *Simon, supra,* 212 Cal.App.2d 177, 181.) ■ The court should take into account matters such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction. (*Estate of Jacobs* (1943) 61 Cal.App.2d 152, 155 [142 P.2d 454].)

■ The apparent purpose of a statute will not be sacrificed to a literal construction. (*Select Base Materials* v. *Board of Equal., supra,* 51 Cal.2d 640, 645; *Ivens* v. *Simon, supra,* 212 Cal.App.2d 177, 181.)

■ Lastly, "Remedial statutes such as [the one] under consideration, are to be liberally construed. [Citation.] They are not construed within narrow limits of the letter of the law, but rather are to be given liberal effect to promote the general object sought to be accomplished. [Citation.]" (*California Grape etc. League* v. *Industrial Welfare Com.* (1969) 268 Cal.App.2d 692, 698 [74 Cal.Rptr. 313].)

■ With the aforementioned principles in mind, we must now determine whether Marcom, while in the process of windup and dissolution, was entitled to a curative permit pursuant to Corporations Code section 25802.

Under the old law, Corporations Code section 26100, securities sold or issued without a permit were absolutely void and buyers were permitted to rescind long after a transaction was concluded. (Witkin, Summary of

Cal. Law (1969 Supp.) Corporations, § 114A at p. 1255.) The old rule and the lack of power in the commissioner to cure substantial defects was subject to much criticism. In 1967, the Legislature authorized the commissioner to grant curative permits for the issuance and sale of any security previously issued or sold without a permit or in contravention of a permit previously obtained. (*Id.,* § 122A at p. 1258; see also 43 State Bar J. 103.)

The apparent legislative purpose of Corporations Code section 25802 was to enable the Commissioner of Corporations to cure technical defects in the issuance or sale of any security, preventing recission of a transaction long after it had been concluded. In so issuing a permit, the commissioner must find that "the plan of business of applicant and the issuance of the curative permit are fair, just, and equitable and the applicant is transacting and intends to transact its business fairly and honestly . . . ." (Corp. Code, § 25802.)

■ "When the word 'business' is used in an ordinance or statute its meaning depends upon the context or upon the purpose of the Legislature." (*City of Lewiston* v. *Mathewson* (1956) 78 Idaho 347, 352 [303 P.2d 680, 683].) In *Hise* v. *McColgan* (1944) 24 Cal.2d 147 [148 P.2d 616], the question before the court was whether a corporation in liquidation was doing business so as to be subject to payment of franchise taxes. The Bank and Corporation Franchise Tax Act defined doing business as ". . . actively engaging in any transaction for the purpose of financial or pecuniary gain or profit." (*Id.* at p. 149.) The court held that during the process of liquidation, business transactions were conducted; and "[w]hile no profit may have been made as that term is usually understood, such factor is not controlling in the definition of the term 'doing business'; rather the criterion is whether or not the goal or aim is financial or pecuniary gain. [Citation.] It should be clear that the commissioner in liquidating . . . [the corporation] was endeavoring to get the best price obtainable for its assets and to conduct its affairs in liquidation to the end that the most financial gain would be realized for its creditors and stockholders. . . . It is not necessary to constitute doing business for franchise tax purposes that there be a regular course of business or transactions." (*Id.* at pp. 150-151.)

■ With the legislative purpose in mind—curing technical errors in the sale or issuance of securities—the word "business" should be given its broadest possible meaning so as to effectuate the statutory objectives. No rationale can be discovered for denying to a corporation in liquidation a curative permit when it has transacted its business, including that engaged

in during the process of liquidation, in a fair, just, and equitable manner. During the process of liquidation, the corporation will endeavor to realize for its creditors and stockholders the greatest financial benefits obtainable. Under Corporations Code section 25802, this is sufficient to entitle a corporation to a curative permit if the commissioner determines that all other requirements have been met.

We therefore hold that the word "business" in Corporations Code section 25802 encompasses those activities engaged in during the process of liquidation; thus, an applicant in the process of dissolution and windup of its corporate affairs is entitled to relief pursuant to section 25802. There was no error committed by the trial court in refusing to issue a writ of mandamus directing the commissioner to set aside his decision granting Marcom a curative permit because Marcom was in the process of dissolution.

### 2. *The commissioner's findings support the decision.*

■■■■ Plaintiffs' second contention on appeal is that the trial court erred in refusing to issue the writ of mandate because the commissioner's findings do not disclose facts from which it may be concluded that the issuance of the curative permit is fair, just, and equitable.

Plaintiffs, it should first be noted, did not provide the trial court with a transcript from the administrative hearing. Plaintiffs agreed that, if the trial court refused to grant additional time in which to obtain the transcript, they would submit the dispute upon the evidence before the court. Therefore, plaintiffs are not now contending that the findings are not supported by the evidence (obviously they could not do so, because of the absence of a transcript), but rather that the decision is not supported by the findings.

Code of Civil Procedure section 1094.5, which deals with review of administrative orders, provides, in subdivision (b), that "Abuse of discretion is established if . . . the order or decision is not supported by the findings, . . ." (See also *Le Strange* v. *City of Berkeley* (1962) 210 Cal.App.2d 313, 320 [26 Cal.Rptr. 550].)

Under Corporations Code section 25802, in order for the commissioner to grant a curative permit he must find: "(a) that the plan of business and the issuance [of the curative permit] are fair, just, and equitable; (b) that the applicant is transacting and intends to transact business fairly and honestly; and (c) that the issuance will not work a fraud upon the holders of outstanding securities." (Witkin, Summary of Cal. Law (1969 Supp.) Corporations, § 122A, pp. 1258-1259.)

■■■■ "Where the petition's allegations of irregular procedure or in-

sufficient evidence have been denied, presumptions arise that the administrative proceedings were in fact regular and supported by the evidence. [Citation.] Thus the burden of proof falls upon the party attacking the administrative decision to demonstrate wherein the proceedings were unfair, in excess of jurisdiction, or showed 'prejudicial abuse of discretion.' It is the responsibility of the petitioner to make available to the court an adequate record of the administrative proceedings; if he fails to do this the presumption of regularity will prevail. [Citation.]" (*Gong* v. *City of Fremont* (1967) 250 Cal.App.2d 568, 574 [58 Cal.Rptr. 664].)

In the instant action, plaintiffs failed to make available to the trial court a record of the administrative hearing. Consequently, the presumption of regularity prevails on the issue of whether the findings were supported by substantial evidence, and our inquiry is limited to determining whether the findings, presuming them to be based upon substantial evidence, supported the decision of the commissioner.

In *Tabory* v. *State Personnel Board* (1962) 208 Cal.App.2d 543 [25 Cal.Rptr. 333], the appellants contended that the board's findings were fatally defective. The court therein stated that "[a]dministrative findings . . . need not be stated with the formality and precision required in judicial proceedings. [Citation.]" (*Id.* at p. 546.) Nor must the court remand if it determines that the required findings may be reasonably implied. (Cal. Administrative Mandamus (Cont.Ed.Bar 1966) § 5.48, at p. 62, citing *Sacramento etc. Dist.* v. *Pac. G. & E. Co.* (1946) 72 Cal.App.2d 638, 647 [165 P.2d 741].)

By the trial court's action in denying issuance of the writ, it is implicit that it found the findings were sufficiently stated, or that the required findings could be reasonably implied.

In *Bixby* v. *Pierno* (1971) 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242], plaintiffs appealed from a judgment denying their petition for writ of mandamus to compel defendant Commissioner of Corporations to set aside his decision approving a recapitalization plan submitted by Ranch Company, the real party in interest. (*Id.* at p. 134.) Under the articles of incorporation, bylaws and applicable provisions of law, specified majorities of the directors and shareholders may adopt a plan of recapitalization unless the commissioner concludes that the plan is not fair, just or equitable to all security holders affected. (Corp. Code, § 25510 [now found in § 25142]; *id.* at p. 148.) The court was asked to hold as a matter of law that the proposed plan was not fair, just and equitable. (*Id.* at p. 149.)

The court, in answer thereto, held that "[t]he statutory discretion of the commissioner would be entirely abrogated were we to hold that the ques-

tion of the fairness of securities transactions necessarily constitutes questions of law for the courts to decide. By its very nature, the exercise of discretion requires the ability to choose between permissible alternatives. If the Legislature has conferred upon an administrative officer or agency the authority to apply such broad standards as the 'fair, just and equitable' criteria involved herein, the courts should not substitute their own judgment for that of the agency, but should uphold the administrative decision unless it is arbitrary, capricious, or fraudulent, having no reasonable basis in law or no substantial basis in fact." (*Id.* at pp. 150-151.)

In the instant case, the commissioner's decision encompasses a lengthy and technical discussion of the activities engaged in by Marcom. After reviewing the evidence, the commissioner found all the requirements of section 25802 to have been met. "Such an administrative decision necessarily involves overwhelming technical knowledge as to matters of corporate structure, finance, taxation, and business judgment." (*Bixby* v. *Pierno, supra,* 4 Cal.3d 130, 148.)

Such a decision also necessarily involves a determination that the plan of dissolution and the issuance of the curative permit are fair, just and equitable. Since the commissioner's decision was based on lengthy and numerous facts, and his conclusions were reasonable in view of the broad statutory discretion vested in him, the trial court was correct in upholding his decision and denying issuance of the writ of mandamus.

### 3. *No fraud resulted from the granting of the curative permit.*

 Plaintiffs contend that granting of the curative permit worked a fraud on them in contravention of Corporations Code section 25802, in that they would have forced upon them shares in a defunct corporation with a stock structure devoid of the protections existing at the time they purchased the subject shares of Marcom. The protections previously existing included a waiver condition limiting participation of promotional shares in distribution, which plaintiffs were not informed could be removed; however, at a later date, such conditions were in fact removed pursuant to an Order Removing Conditions issued by the Commissioner of Corporations. A limitation on the salaries paid to corporate officers was also later removed after a public hearing was held before the Department of Corporations. Subsequent to said hearing, an amended permit was issued whereby said condition was in fact deleted.

Under Corporations Code section 25802, in determining whether a curative permit should issue, it must be found that "the issuance of the curative

permit will not work a fraud *upon the holders of any of the issued and outstanding securities* of applicant." (Italics added.)

From the language of section 25802, it is evident that in determining whether to grant a curative permit, the Commissioner of Corporations must consider whether such issuance would work a fraud not only on the holders of securities issued without or in contravention of a permit, but also upon holders of validly issued securities.

In the instant case, plaintiffs contend that if the permit is allowed to stand, they will be compelled to hold securities having significantly different characteristics from those existing at the time of the original purchase.

The protective conditions which were removed in the instant case were removed in accordance with proper procedure. The waiver condition limiting participation of promotional shares in distribution was removed pursuant to an order removing conditions issued by the Commissioner of Corporations. The limitation on the salaries paid to corporate officers was removed after a public hearing and issuance of an amended permit. The removal of such protections would affect equally those holders of securities which had been validly issued. The rights of these holders must also be considered in determining whether the curative permit should issue. Thus, it would appear that a limited few, the holders of 282 shares out of 38,712, should not benefit by mere technical defects at the expense of the remaining stockholders who would be equally affected by the removal of the aforementioned protections. Therefore, issuance of the curative permit did not work a fraud upon plaintiffs.

### 4. *No error in denial of findings of fact and conclusions of law.*

Plaintiffs' last contention on appeal is that the trial court erred in denying preparation of findings of fact and conclusions of law.

Code of Civil Procedure section 632 provides that *upon the trial of a question of fact,* the court shall make findings if requested by one of the parties. This requirement is made applicable to a mandamus proceeding by Code of Civil Procedure section 1109.

Where no evidence is presented to the trial court and the hearing is reduced to a decision on a question of law, no findings are necessary. (*Baroldi* v. *Denni* (1961) 197 Cal.App.2d 472, 477 [17 Cal.Rptr. 647]; *Johnston* v. *Security Ins. Co.* (1970) 6 Cal.App.3d 839, 844 [86 Cal.Rptr.

133].) In the instant case no evidence was proffered to the trial court; the issue before the trial court was one of law—whether the findings of the commissioner supported the decision. Consequently, no findings were necessary and the trial court did not err in denying plaintiffs' request therefor.

The trial court's denial of the petition for writ of mandamus was proper.

Order and judgment affirmed.

Devine, P. J., and Rattigan, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 9, 1972.