[Civ. No. 38890. First Dist., Div. Two. May 17, 1977.]

ELIZABETH STEILBERG, Plaintiff and Respondent, v.
JEROME A. LACKNER, as Director, etc., Defendant and Appellant.

**COUNSEL**

Evelle J. Younger, Attorney General, John J. Klee, Jr., John Fourt and Jerome M. Behrens, Deputy Attorneys General, for Defendant and Appellant.

Robert A. Goldstein and Thomas Schneider for Plaintiff and Respondent.

**OPINION**

**KANE, J.—**

### THE ISSUE

In this appeal we are called upon to interpret the meaning of, and the interrelationship between, sections 11152 and 11153.7 of the Welfare and Institutions Code.[1] The precise issue is whether an applicant who owns and uses a multiple dwelling as her home, a part of which she rents, is entitled to Medi-Cal benefits regardless of the value of the property (§ 11152) or whether in determining eligibility for such benefits the $5,000 assessed value limitation contained in section 11153.7 applies.

---

[1]Unless otherwise indicated, all references will be made to the Welfare and Institutions Code of California.

## FACTS

In June 1974, respondent Elizabeth Steilberg, born in 1896, applied for Medi-Cal[2] benefits as a "Medically indigent person" (§ 14051).[3] At the time of the filing of the application, respondent and her husband lived in their own home, which they had occupied for 52 years. The real property in dispute is a single parcel located on a steep lot in Berkeley, and consists of three buildings: two cottages and the main dwelling. The evidence is uncontradicted that while respondent and her husband lived in one unit in the main building, the two small cottages, two bedrooms, and the attic of the main dwelling which had been converted into an apartment, were rented. It is likewise uncontroverted that the Planning Department of the City of Berkeley found the real property in question to be an "indivisible parcel"; and that the lot and improvements had an assessed value of $14,950 (market value $59,800).

## PROCEDURAL HISTORY OF CASE

In July 1974, County of Alameda denied respondent's claim on the ground that the rental units exceeded the assessed valuation of $5,000. Respondent appealed the decision and requested a fair hearing in the matter. The referee ruled in respondent's favor by finding that the property owned by respondent was indivisible and that all of the rental units should be deemed a "home" within the meaning of section 11152, and thus must be disregarded for the purpose of determining respondent's eligibility for Medi-Cal benefits. In January 1975, the Director of the California Department of Health (hereafter appellant or Director) issued an alternate decision which, contrary to the order of the referee, found that the two cottages and the rented space constituted property other than a home, and as a result respondent fell within the restrictive provisions of section 11153.7. From the order denying her claim, respondent sought judicial review by filing a petition for writ of mandate in the superior court. On November 4, 1975, the trial court issued a peremptory writ of mandate reversing the Director's decision on the ground that Medi-Cal benefits cannot be denied on the basis of respondent's interest in property constituting her home.

---

[2]"Medi-Cal" is the name for the program of health care established by section 14000 et seq. Under statutory definition, "Medi-Cal" means the California Medical Assistance Program (§ 14063).

[3]Section 14051 provides that " 'Medically indigent person' means an aged or other person under Section 14005.7 who could qualify as a public assistance recipient as defined in Section 14005.1 except for income and resources."

## DISCUSSION

Before we proceed to resolve the principal issue of the case, we set out the basic rules relating to interpretation of statutes.

■ Paramount among these rules are the following: In construing a statute, the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law (*Cossack* v. *City of Los Angeles* (1974) 11 Cal.3d 726, 732 [114 Cal.Rptr. 460, 523 P.2d 260]; *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]). In determining the legislative intent, the court turns first to the words used in the statute (*People* v. *Knowles* (1950) 35 Cal.2d 175, 182 [217 P.2d 1]). ■ The words, however, must be read in context, keeping in mind the nature and obvious purpose of the statute (*Johnstone* v. *Richardson* (1951) 103 Cal.App.2d 41, 46 [229 P.2d 9]), and the statutory language applied must be given such interpretation as will promote rather than defeat the objective and policy of the law (*City of L.A.* v. *Pac. Tel. & Tel. Co.* (1958) 164 Cal.App.2d 253, 256 [330 P.2d 888]). ■ Statutes or statutory sections relating to the same subject must be construed together and harmonized if possible (*Mannheim* v. *Superior Court* (1970) 3 Cal.3d 678, 687 [91 Cal.Rptr. 585, 478 P.2d 17]; *County of Placer* v. *Aetna Cas. etc. Co.* (1958) 50 Cal.2d 182, 188-189 [323 P.2d 735]). ■ Finally, in ascertaining legislative intent, the courts should consider not only the words used, but should also take into account other matters, such as the object in view, the evils to be remedied, the history of the times, legislation upon the same subject, public policy and contemporaneous construction (*Alford* v. *Pierno* (1972) 27 Cal.App.3d 682, 688 [104 Cal.Rptr. 110]; *Estate of Jacobs* (1943) 61 Cal.App.2d 152, 155 [142 P.2d 454]).

■ When viewed and analyzed in the light of the foregoing principles, the statutory provisions regulating the property qualifications of public assistance applicants and recipients (§§ 11150-11158), of which the code sections at issue are but a part, evince the all-pervasive legislative intent that persons who otherwise would be eligible for public assistance may not be deprived of such benefits solely for the reason that they own real or personal property and that such persons may retain their property under the circumstances and to the extent allowed by the

statute (§ 11150).[4] However, in regulating the property exemption of otherwise eligible public assistance applicants and recipients, the statute draws a definite distinction between property which serves as a *home* for the applicant or recipient and one which is owned and utilized for the *sole* purpose of generating income.

Motivated by the obvious purpose that aged and disabled persons may not be deprived of their home in which they have been living, section 11152 provides that "*An applicant* or recipient *may retain* personal or real *property* owned by him, or in combination with any other person, *without reference to its value, if it serves to provide the applicant* or recipient *with a home.*" (Italics added.) Far from being unmindful of the type of situation here presented (i.e., when the home is a multiple dwelling, a part of which is utilized for rent), the statute further indicates that "*The basic home may be a multiple-dwelling unit* if the units not occupied by the applicant or recipient are producing income for the support of the applicant or recipient consistent with their rental value." (§ 11152; italics added.) *The meaning and import of section 11152 is thus clear and unmistakable: one,* it applies to property used for a home; *two,* the exemption with regard to the property serving as a home is not limited or curtailed by the value of the property; *three,* in case the home property consists of a multiple dwelling, the exemption obtains only if the units not occupied by the owner are utilized and produce a fair income consistent with their rental value.

*By contrast, section 11153.7 addresses itself to a different kind of property,* i.e., *property owned and used for the purpose of producing income.* Since the primary concern of the exemption statute (§ 11152) is to preserve the ownership of the home for those aged and disabled persons who are in need and, but for the exemption, would be forced to sell their home to pay medical and hospital expenses, the statute grants a different degree of protection with regard to the home as opposed to other property. While the property used for a home enjoys a full-fledged exemption without regard to its value, and this exemption obtains even if part of the multiple unit home is rented (§ 11152), property utilized solely for income producing purposes has only a qualified exemption,

---

[4]Section 11150 provides in part that "It is the intent of this article to set forth the amount of personal or real property, or both, which an applicant for or recipient of public assistance may retain and remain eligible to receive public assistance provided he meets the other eligibility requirements for the category of public assistance for which he is an applicant or recipient."

i.e., only to the extent of $5,000 assessed value or $20,000 market value (§ 11153.7).[5]

Our conclusion that sections 11152 and 11153.7 are mutually exclusive finds support not only in the language of the cited sections, but also in other statutory provisions pertaining to the same subject matter and the general rules of statutory interpretation. Thus, defining the purposes for which the property of a public assistance applicant or recipient may be held, section 11151 provides, in part, that "An applicant or recipient shall be ineligible to receive public assistance unless the property he owns is *held for the following purposes*: [¶] 1. *The property is used to provide the applicant or recipient with a home and conforms to the provisions of Section 11152 of this code.* [¶] 2. *The property is producing income* for the support of the applicant or recipient *and conforms to the provisions of Section 11153.7 of this code.*" (Italics added.)

Section 11153.7 as amended in 1976 serves as a further indication that the exemption provided by this section was intended to be an *addition* to the property exemptions permitted by the other provisions of the statute. As amended in 1976, section 11153.7 reads, in part, that "(a) *In addition to real property permitted by other provisions of this part,* real property owned by the applicant or recipient, or in combination with his spouse, may be retained in an amount not to exceed a market value, less the amount of any encumbrance of record, of twenty-five thousand dollars ($25,000), provided it is being adequately utilized or is producing income reasonably consistent with its value which is used for the support of the applicant or recipient." (Italics added.) ■ It is, of course, axiomatic that in interpreting statutes we may properly consider a subsequent expression of legislative intent regarding the construction of a prior statute or statutory language (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 590 [128 Cal.Rptr. 427, 546 P.2d 1371]; *California Emp. etc. Com.* v. *Payne* (1947) 31 Cal.2d 210, 213-214 [187 P.2d 702]).

■ Finally, we attach special significance to the circumstance that whereas section 11152 narrowly defines its subject and deals with the specific theme of exempting property serving as the home of an applicant, the terms of section 11153.7 are broad and regulate income

---

[5] Section 11153.7 provided at the time here relevant that "*Real property* owned by the applicant or recipient or in combination with his spouse, *which is producing income,* reasonably consistent with its value, which is used for the support of the applicant or recipient, *may be retained in an amount not to exceed an assessed valuation of five thousand dollars* ($5,000) as assessed by the county assessor." (Italics added.)

producing real property in general. The clear meaning of the differing language of the two sections is that while section 11152 is a special statute, section 11153.7 is merely a general one. ■ It is a cardinal rule of statutory interpretation that specific statutory regulations control over the general statutes (*Rose* v. *State of California* (1942) 19 Cal.2d 713, 723-724 [123 P.2d 505]; *Bozaich* v. *State of California* (1973) 32 Cal.App.3d 688, 697 [108 Cal.Rptr. 392]).

Aside from the foregoing considerations, there is an additional reason why the ruling of the trial court must be sustained and respondent must be held eligible for Medi-Cal benefits in the present case. Section 11150 specifically provides that "In the formulation of any regulations pursuant to this article and in the administration thereof, consideration shall be given to the ability and circumstances of the applicant or recipient in order that undue hardship is not imposed upon any applicant or recipient in making plans to comply with the provisions of this article...." Even more importantly, the statute underlines that "*No applicant* or recipient *shall be considered ineligible* for retaining property *where disposition would alter or impair reasonable access to or the normal use of his home.*" (§ 11150; italics added.)

As pointed out earlier, the main dwelling and the two cottages, which constitute the subject matter of the present litigation, are located on a steep hill lot which has but a narrow, single access road. Due to its very location, which presents fire hazards and inadequate parking conditions, the property was declared an indivisible parcel by the city authorities. But even if some division of the property was legally feasible (which it is not), it is apparent that any such action would, of necessity, impair or alter the reasonable access to or the normal use of respondent's home, contrary to the express prohibition of section 11150.

Appellant's charge that section 11152, if not limited by the restrictive provisions of section 11153.7, would yield an unconscionable benefit to the rich, and that under his interpretation a 100-unit Beverly Hills apartment owner who lives in one unit would be able to retain his "million-dollar home" and still be entitled to Medi-Cal benefits designed for the poor, is so patently erroneous that it cannot be characterized other than as sheer social demagoguery. To begin with, the statutory scheme as a whole makes it manifest that in order to qualify for the property exemption, the owner of the multi-dwelling home must utilize the extra units by way of rent in order to generate income. Furthermore, it is indisputable that under the statute and the regulations (Cal. Admin.

Code, tit. 22), a Medi-Cal applicant must first use his own income and resources for medical care (tit. 22, § 50601) before he is entitled to Medi-Cal benefits; or, to put it another way, he must be needy in order to be eligible for the public assistance. More accurately, a person becomes eligible for Medi-Cal payments only if his income above the "maintenance need" is not sufficient to cover the medical, hospital, etc. expenses (§§ 14005.7, 14005.12; tit. 22, §§ 50033, 50602-50608.1). This, of course, leads to the ineluctable conclusion that appellant's hypothetical Beverly Hills apartment house owner who would be duty bound to utilize 99 apartment units by way of rental and must apply the income derived from such rented units, would never qualify for the envisioned public assistance under the statute and regulations. Appellant's assertion of such an example is simply spurious; it has nothing to do with reality.

In light of the foregoing discussion, appellant's additional arguments may be briefly disposed of. The contention that respondent failed to show that the rental units were producing income for her support consistent with their rental value (§ 11152) is rebutted by the record itself, which shows that the opposite is true. ■ Appellant's insistence that the three structures on the lot do not constitute "a multiple-dwelling" within the meaning of section 11152 because they are separate buildings, does not have any merit either. Suffice to repeat that the two cottages and the main building are located on an indivisible parcel. In this situation the contention that since the units are in three detached structures rather than in one building and do not therefore constitute a "multiple dwelling unit" within the meaning of section 11152 is likewise spurious. ■ Finally, appellant's reliance on the differing language of the regulation which restricts the scope of statutory provisions must be summarily rejected. It is blackletter law that administrative regulations that alter or amend the statute or enlarge or impair its scope are void, and the courts not only may, but must, strike down such regulations (*Morris* v. *Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697]; *Rosas* v. *Montgomery* (1970) 10 Cal.App.3d 77, 88 [88 Cal.Rptr. 907, 43 A.L.R.3d 537]).

We finally note that since the appeal at hand concerns welfare assistance, the prevailing respondent is entitled to attorney's fees (§ 10962; *Le Blanc* v. *Swoap* (1976) 16 Cal.3d 741, 743 [129 Cal.Rptr. 304, 548 P.2d 704]).

## DISPOSITION

The judgment is affirmed. The case is remanded to the trial court to determine the amount of reasonable attorney's fees to be awarded to respondent.

Taylor, P. J., and Rouse, J., concurred.