[Civ. No. 22098. Third Dist. May 9, 1983.]

HENRY D. McCALL, Plaintiff and Appellant, v.
OROVILLE MERCURY COMPANY, INC., Defendant and Respondent.

**COUNSEL**

Monroy & Sneathern and Jon F. Monroy for Plaintiff and Appellant.

Minasian, Minasian, Minasian, Spruance, Baber & Meith and William H. Spruance for Defendant and Respondent.

**OPINION**

**PUGLIA, P. J.**—Plaintiff appeals from the judgment of dismissal after the trial court sustained without leave to amend the demurrer of defendant Oroville Mercury Company, Inc., to his third amended complaint. The complaint alleged invasion of privacy, infliction of emotional distress, conspiracy and other causes of action arising out of the publication in defendant's newspaper of plaintiff's criminal record. The demurrer was premised on the ground that the offending publication was constitutionally privileged. Plaintiff maintains, however, that there is no privilege because the defendant received the published information in violation of Penal Code section 11143. For present purposes we shall assume that a violation of Penal Code section 11143 will vitiate a privilege otherwise to publish information so obtained. The issue on appeal, therefore, is whether section 11143 applies to members of the news media. We hold that it does not.

The defendant Oroville Mercury Company, Inc., is a California corporation. It is the publisher of a newspaper known as the Oroville Mercury Register. In May 1980, the Mercury Register published an article relating plaintiff's criminal record. Plaintiff alleges the information published was not part of the public record nor in the public domain; rather it was obtained from his criminal history record maintained by the state Department of Justice (see Pen. Code, § 11105, subd. (a)) and as such was "unlawfully obtained." Plaintiff does not deny the accuracy of the information but alleges that since the reported events occurred he has been an exemplary and respected member of the community and has been elected to and is now serving in public office. Plaintiff alleges the publication of his criminal record, which he had kept secret from his friends and the public, exposed him to ridicule and contempt and caused him to lose an election in which he was a candidate for higher public office.

The right to keep information private often clashes with the First Amendment right to disseminate information to the public. Sensitive to this conflict and the privacy tort's potential encroachment on the freedoms of speech and the press, decisional law recognizes a broad privilege cloaking the truthful publication of newsworthy matters. (See, e.g., *Time, Inc.* v. *Hill* (1967) 385 U.S. 374 [17 L.Ed.2d 456, 87 S.Ct. 534]; *Forsher* v. *Bugliosi* (1980) 26 Cal.3d 792 [163 Cal.Rptr. 628, 608 P.2d 716]; *Kapellas* v. *Kofman* (1969) 1 Cal.3d 20 [81 Cal.Rptr. 360, 459 P.2d 912]; *Beruan* v. *French* (1976) 56 Cal.App.3d 825 [128 Cal.Rptr. 869].) In determining whether particular items are newsworthy the decisions consider a variety of factors, including whether there is a legitimate public interest in the information and the extent to which the party claiming the right of privacy voluntarily entered into the public sphere. (*Kapellas* v. *Kofman, supra,* 1 Cal.3d at p. 36.) A government official or candidate for public office has usually been considered a "public figure" who has waived much of his right to privacy. Almost any truthful comment on his qualifications for office, no matter how serious an invasion of privacy, will be privileged. (*Id.,* at pp. 36-37; *Beruan* v. *French, supra,* 56 Cal.App.3d at p. 828.) A charge of criminal conduct, no matter how remote in time or place, is relevant to an official's or a candidate's fitness for public office. (*Monitor Patriot Co.* v. *Roy* (1971) 401 U.S. 265, 277 [28 L.Ed.2d 35, 44, 91 S.Ct. 621]; *Beruan* v. *French, supra,* 56 Cal.App.3d at p. 828.)

Plaintiff admits that the facts published in defendant's newspaper are newsworthy because they concern his fitness as a holder of and candidate for public office. He contends the publication nevertheless was not privileged because the defendant obtained the information illegally under Penal Code section 11143. That section provides: "Any person, except those specifically referred to in Section 1070 of the Evidence Code, who, knowing he is not authorized by law to receive a record or information obtained from a record, knowingly buys, receives, or possesses the record or information is guilty of a

misdemeanor." The record referred to in section 11143 is the state summary criminal history information commonly known as a "rap sheet" (see Pen. Code, §§ 11105, subd. (a), 11140).

The relevant part of Evidence Code section 1070 referred to in Penal Code section 11143 provides: "(a) A publisher, editor, reporter, or other person connected with or employed upon a newspaper, magazine, or other periodical publication . . . cannot be adjudged in contempt . . . for refusing to disclose . . . the source of any information procured while so connected or employed for publication in a newspaper, magazine or other periodical publication, or for refusing to disclose any unpublished information obtained or prepared in gathering, receiving or processing of information for communication to the public." A corporate publisher such as defendant is a "person" within the meaning of Evidence Code section 1070 (Evid. Code, § 175).

Plaintiff argues that the persons exempted from Penal Code section 11143 by its reference to Evidence Code section 1070 are only those members of the print media who are involved in contempt proceedings for refusing to reveal a source of information. Under plaintiff's interpretation of section 11143, a member of the print media involved in such contempt proceedings could receive and possess official rap sheets with impunity; in all other circumstances such persons would thereby be committing a misdemeanor.

We can perceive no rational reason for limiting the exemption of Penal Code section 11143 as suggested by plaintiff. That interpretation finds no support in the plain language of section 11143 and would in fact render nugatory the exception in that section in favor of media members. Since such persons may not be adjudged in contempt for failure to disclose a source or reveal unpublished information, it is not reasonable to assume the Legislature intended to limit their exemption from section 11143 to circumstances which will likely never arise. We are enjoined to avoid a forced construction which would thwart a legislative intent which is reasonably apparent from the language of the enactment. (*People* v. *Burrows* (1968) 260 Cal.App.2d 228, 233 [67 Cal.Rptr. 28].) The language of section 11143 coupled with the traditional reluctance to impede the free flow of truthful information relevant to the public interest (see *Kapellas* v. *Kofman, supra,* 1 Cal.3d at p. 37; *Steilberg* v. *Lackner* (1977) 69 Cal. App.3d 780, 785 [138 Cal.Rptr. 378]) makes it clear that section 11143 is intended generally to exempt members of the news media from its sanctions, not merely those members who at the relevant time happen to be involved in contempt proceedings for failure to disclose a source or reveal unpublished information.

In receiving and possessing plaintiff's rap sheet or information therefrom, defendant did not violate Penal Code section 11143. Since plaintiff's sole

challenge to the application of that section's exemption is legally untenable, the demurrer was properly sustained without leave to amend.[1]

The judgment of dismissal is affirmed.

Evans, J., and Sims, J., concurred.

---

[1]In the sixth cause of action plaintiff alleges the Mercury Register violated Penal Code section 851.7, which provides for the sealing of misdemeanor arrest records. This section only applies in the event there was no conviction, however, and the complaint admits the publication related plaintiff's record of convictions. Assuming a violation of section 851.7 can be redressed civilly, plaintiff has not stated a cause of action therefor.