99 Cal.Rptr.2d 868 (2000)
83 Cal.App.4th 609
The PEOPLE, Plaintiff and Respondent,
v.
Alejandro FARELL, Defendant and Appellant.
No. H019633.
Court of Appeal, Sixth District.
August 31, 2000.
Review Granted December 13, 2000.
*869 Thomas K. Nolan, Mara I. Kapelovitz, Nolan & Armstrong, for Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Senior Assistant Attorney General, Joan Killeen, Supervising Deputy Attorney General, Raymond A. Cardozo, Deputy Attorney General, for Respondent.
MIHARA, J.
In this case we are called upon to determine whether Penal Code[1] section 1203.044, which mandates at least a 90-day sentence in a county jail as a condition of probation for a defendant convicted of a felony for theft of an amount exceeding $50,000 in a single transaction or occurrence, applies to the theft of trade secrets. We hold that the statute is ambiguous and may not be applied to this offense.

FACTUAL BACKGROUND[2]
Defendant Alejandro Farell was employed as a design engineer at Digital Equipment Corporation (DEC) on October 30, 1994. DEC developed, manufactured, and marketed computers and microprocessor chips.[3] When hired, defendant signed an agreement to surrender all rights and documents to DEC upon termination.
At DEC, defendant was a member of the design group that developed the StrongArm chip. The chip was extremely successful and all of the members of the group began receiving employment offers from other companies.
*870 In April of 1997, defendant announced that he was going to accept a position with a start-up company. He tendered his two-week notice, with his last day of work scheduled for May 3, 1997. On April 30, defendant went through a DEC exit interview during which he was informed he had to return all company property and documents upon termination of his employment.
On his last day of work, defendant was ordered to surrender his I.D. badge and access card at the end of the day. He stated that he needed his badge and access card because he had work to complete and would return to the office the following day. The I.D. and access card were left in the office the following Monday. It was later discovered that on May 3 and 4, defendant downloaded and printed 164 (out of 222) schematics for DEC's Strong-Arm project.
A search warrant was executed at defendant's residence. Designs for the Strong-Arm project were recovered along with numerous other items and documents considered by DEC to be of the most confidential and proprietary nature. These items included the preliminary specifications for the SA-1500, the follow-up chip to the StrongArm 110. Defendant had not worked on the SA-1500, nor had he worked on several of the projects described in documents found in his home. Defendant had left DEC for a job at a start-up company where he was working on a media processor with applications similar to the SA-1500.

PROCEDURAL BACKGROUND
In an amended complaint, the district attorney charged defendant with trade secret theft, with special allegations that the loss exceeded $2.5 million (former § 12022.6, subd. (d)) and that the theft was of an amount exceeding $100,000 within the meaning of sections 1203.044 and 1203.045.
Defendant pleaded no contest to the theft of trade secrets.[4] He also waived jury trial and preliminary hearing on the special allegations. Thereafter, the matter was submitted to the court for the purpose of having the court decide whether section 1203.044 was applicable to the case.
Thereafter, the parties briefed and argued the legal interpretation of section 1203.044, specifically whether the word "amount" in the statute refers only to currency, or whether it refers to anything of value. The court ruled that section 1203.044 is not limited to the theft of "money or cash equivalents." Pursuant to North Carolina v. Alford (1970) 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162, defendant subsequently admitted an allegation that the theft caused a loss exceeding $1 million. (Former § 12022.6, subd. (c).)
On January 8, 1999, defendant was placed on probation, conditioned on service of five months in county jail. Defendant requested and was granted a stay pending appeal. This appeal followed.

DISCUSSION
Prior to sentencing, defendant unsuccessfully argued that section 1203.044, subdivision (a) did not apply to his theft of trade secrets. Defendant argues on appeal that the trial court erred in concluding that subdivision (a) applies not only to monetary property but also to the theft of property such as trade secrets.

Standard of Review
Where, as here, we are confronted with a question of statutory construction the court conducts a de novo review, independent of the trial court's ruling or reasoning. (Redevelopment Agency v. County of Los Angeles (1999) 75 Cal.App.4th 68, 74, 89 Cal.Rptr.2d 10.)
"As with any statutory construction inquiry, we must look first to the language *871 of the statute. To determine legislative intent, a court begins with the words of the statute, because they generally provide the most reliable indicator of legislative intent. If it is clear and unambiguous our inquiry ends. There is no need for judicial construction and a court may not indulge in it. If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs." (Diamond Multimedia Systems, Inc. v. Superior Court (1999) 19 Cal.4th 1036, 1046-1047, 80 Cal.Rptr.2d 828, 968 P.2d 539, internal quotations and citations omitted.) When the statutory language is ambiguous, we may examine the goals to be achieved and the legislative history to assist us in resolving the ambiguity. (People v. Coronado (1995) 12 Cal.4th 145, 151, 48 Cal.Rptr.2d 77, 906 P.2d 1232.)

The Statute
Section 1203.044, subdivision (a) provides in relevant part: "This section shall apply only to a defendant convicted of a felony for theft of an amount exceeding fifty thousand dollars ($50,000) in a single transaction or occurrence. This section shall not apply unless the fact that the crime involved the theft of an amount exceeding fifty thousand dollars ($50,000) in a single transaction or occurrence is charged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact."
"Words used in a statute or constitutional provision should be given the meaning they bear in ordinary use. If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature ..." (Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735, 248 Cal.Rptr. 115, 755 P.2d 299, internal citations omitted.) The word "amount" is defined as "the total number or quantity" and/or "a principal sum and interest on it." (Merriam-Webster's Collegiate Diet. (10th ed.1993) p. 39.) The only "number," "quantity," or "sum" designated in subdivision (a) is described in "dollars." There is no specific reference to other property to which the subdivision might apply. One could argue that there is no language in the subdivision that could reasonably be construed as including other kinds of property. Phrasing such as, "property taken is of a value exceeding" or "property worth more than" would have had such an effect, but is not present. In construing a statute the function of a court is to declare "what is in terms or in substance contained therein, not to insert what has been omitted." (Code Civ. Proc., § 1858; Williams v. Superior Court (1993) 5 Cal.4th 337, 357, 19 Cal.Rptr.2d 882, 852 P.2d 377.)
The language of other subdivisions within the statute itself supports the view that the Legislature intended section 1203.044 to apply only to monetary theft. For instance, subdivision (j) of the statute provides for the disclosure of the assets belonging to a defendant convicted of theft of an amount exceeding $50,000. Subdivision (j)(2) requires the defendant to submit a statement including "[a]ny item of personal property worth more than three thousand dollars ($3,000) in which the defendant has any interest." Subdivision (j)(3) requires disclosure of all domestic and foreign assets of "a value over three thousand dollars ($3,000)" and subdivision (j)(12) the disclosure of "[a]ll debts in excess of three thousand dollars ($3,000) owed to any person or entity." Subdivision (j)(15) requires disclosure of all sales, transfers, assignments, quitclaims, conveyances, or encumbrances of any interest in real or personal property "of a value exceeding three thousand dollars ($3,000)" made by the defendant. Subdivision (o) of the statute requires the defendant to report the source and "value of the money or real or personal property received" during the term of probation. The phrasing in these subdivisions establishes that the Legislature knew how to make the distinction between monetary property and other property where its worth or value would be at issue and did so in section 1203.044.
The Penal Code is also replete with references to property classified according to *872 its value. (See e.g., § 487, subd. (a) [grand theft is committed when the "personal property taken is of a value exceeding four hundred dollars"]; 487e [theft of a dog "which is of a value exceeding four hundred dollars" is grand theft]; 496b [possession of stolen library books with "the value of more than fifty dollars" constitutes first-degree receipt of stolen property]; § 502, subd. (d)(2)(A) & (B) [punishment for unauthorized use of computer services where "value of the computer services" is above or below four hundred dollars]; § 1202.4, subd. (f)(3)(A) [restitution in a dollar amount sufficient to reimburse victim for "payment for the value of stolen or damaged property"]; § 1203.048, subd. (a) [probation denied for computer or telephonic crimes "involving the taking of or damage to property with a value exceeding one hundred thousand dollars"].)
On the other hand, the statute applies to defendants "convicted of a felony for theft of an amount exceeding ... $50,000." The phrase "a felony for theft" might connote any felony that involves any theft. A theft is by dictionary definition the unlawful taking of property (Merriam-Webster's Collegiate Diet., supra, at p. 1222); i.e., anything of value, be it money or other personal property.[5] Thus, the phrase "felony for theft" could be construed to reference any of the myriad statutes that proscribe all manner of theft in all their various permutations from embezzlement to car theft to trade secret theft. Consonant with such a construction, the phrase "of any amount exceeding fifty thousand dollars" would serve to narrow the breadth of the prior phrase by limiting it to large thefts.
Since section 1203.044 may be read two different ways, the statutory language is ambiguous. We therefore address the goals to be achieved and the legislative history of the statute.

Legislative Background
Section 1203.044 was enacted as part of the Economic Crime Act of 1992 (the Act). (Stats.1992, c. 1334 (S.B.541.)) Section 1 of the Act provides in relevant part as follows: "The Legislature finds and declares that major economic or white collar' crime is an increasing threat to California's economy and the well-being of its citizens. The Legislature intends to deter that crime by ensuring that every offender, without exception, serves at least some time in jail and by requiring the offenders to divert a portion of their future resources to the payment of restitution to their victims."
The statement of intent is broad in scope. That is, the problem is perceived not just as a threat to individual investors but to "California's economy." However, on closer analysis, the term "white collar crime" appears overbroad and misleading.[6] An examination of the legislative history of Senate Bill 541 indicates the Legislature did not intend to include every form of "white collar crime" in the Act.
We review the pertinent legislative history in an effort to uncover any indications of legislative intent. (Diamond Multimedia Systems, Inc. v. Superior Court, supra, 19 Cal.4th at p. 1055, 80 Cal. Rptr.2d 828, 968 P.2d 539; see also, Steilberg v. Lackner (1977) 69 Cal.App.3d 780, 785, 138 Cal.Rptr. 378.) We consider the circumstances and events leading up to the introduction of the bill, including statements by various parties concerning the nature and effect of the proposed law, and the actions taken and statements made during legislative consideration. We also take into account "the object in view, the evils to be remedied, the history of the times, legislation upon the same subject, public policy and contemporaneous construction." (Ibid.)
*873 The author of Senate Bill 541 was Senator Robert Presley. A statement by the sponsoring legislator may be used to show legislative intent, to the extent it "evidences the understanding of the Legislature" and not simply the particular legislator's personal views. (In re Marriage of Bouquet (1976) 16 Cal.3d 583, 589, 128 Cal.Rptr. 427, 546 P.2d 1371; see also People v. Overstreet (1986) 42 Cal.3d 891, 900, 231 Cal.Rptr. 213, 726 P.2d 1288.) A news release from Senator Presley's office dated March 15, 1991 contained the following headline: "PRESLEY BILL WOULD TIGHTEN SCREWS ON CONVICTED S & L OFFICIALS: NEW FOCUS ON RESTITUTION FOR VICTIMS FROM WHITE COLLAR CRIMINALS." The release initially states: "Senator Robert Presley introduced SB 541 today, the Economic Crime Act of 1991, declaring `we must make it very expensive under the criminal law to steal people's life savings, as in the case of the savings and loan scandals or other future similar situations." After setting forth what SB 541 would do, the news release then states: "Senator Presley, a former Undersheriff, says we must understand this institutional theft is as serious a crime as burglary and other forms of common theft. In many instances more harmful, as the victims of the bunco schemes and fraudulent investment plans will tell you of shattered lives and retirement plans gone forever."
At the bill's introduction to the Senate, the section called "Intent of the Legislature" declared that the proposed statute was aimed at those who stole large sums of money: "The Legislature finds that economic, or `white collar' crime is an increasing threat to California's economy and the well-being of its citizens. The Legislature finds that economic crime poses particular problems which have not been adequately addressed by existing law. The maximum penalty for stealing large amounts of money has been too low to deter potential offenders...." (Preamble to the Economic Crime Act of 1991 (SB 541), emphasis supplied.)
It appears obvious from Senator Presley's press release and the bill's introduction to the Senate that the initial purpose of SB 541 was to punish the theft of large sums of money. However, it is necessary to examine the legislative changes[7] made to the bill.
"The evolution of a proposed statute after its original introduction in the Senate or Assembly can offer considerable enlightenment as to legislative intent. Generally the Legislature's rejection of a specific provision which appeared in the original version of an act supports the conclusion that the act should not be construed to include the omitted provision." (People v. Goodloe (1995) 37 Cal.App.4th 485, 491, 44 Cal.Rptr.2d 15.)
The original version of SB 541, section 12703(a) provided in relevant part: "If any person intentionally takes, obtains, receives, purchases, sells, withholds, conceals, damages, destroys, or causes the loss of money, personal property, or real property in the commission of a specified offense, and the value of that money, personal property, or real property is worth: [various specified amounts]...." As enacted, 1) the statute substitutes "theft" for the enumerated ways of depriving a victim of property,[8] and 2) eliminates specification of the kinds of property that can be the *874 object of theft. The amendment not only deletes "personal property" but "money" as well.
It is not clear what the Legislature intended by the term "theft of an amount exceeding." On one hand, it may refer to a theft of anything where a definite, quantified amount can be ascertained from the face of the document, such as checks, promissory notes, bonds, etc. Alternatively, it may refer to the theft of all personal property with a value of more than the amount specified in the statute.
Legislative committee reports and analyses are also appropriate items of consideration in determining legislative intent. (California Teachers Assn. v. San Diego Community College Dist. (1981) 28 Cal.3d 692, 699-700, 170 Cal.Rptr. 817, 621 P.2d 856; People v. Lamb (1999) 76 Cal.App.4th 664, 680, 90 Cal.Rptr.2d 565.) There are certain committee reports on SB 541 that appear to support the view that "theft of an amount" refers to monetary property.
On April 30, 1991, the Senate Committee on Judiciary conducted a meeting in which the key issue was the enactment of the Economic Crime Act of 1991. The purpose of the legislation was described as imposing specified enhancements for additional terms of imprisonment for violation of specified offenses, "including certain theft, embezzlement, and forgery offenses, the fraudulent issuance of documents of title to merchandise, specified securities fraud, and certain felony violations regarding financial institutions." (Emphasis supplied.) The fact that the Act includes "certain" theft, indicates it does not encompass all theft. The same analysis was made at the January 28, 1992 meeting of the Senate Rules Committee.
On August 12, 1992, the Assembly Committee on Public Safety met to consider SB 541. The digest reports that the bill "applies to cases involving the theft of over $50,000" (Emphasis supplied.) This language would appear to apply to monetary property only.
Finally, on September 9, 1992, Senator Presley wrote a letter to Governor Wilson urging the signing of SB 541. The letter referred to the fact that the savings and loans scandals had created low public morale, again implying the bill applied to monetary theft.
A letter to a governor urging the signing or veto of a bill, even if from an author or sponsor of the bill, does not reveal the intent of the Legislature unless the letter is shown to be part of the legislative discussion or communicated to the general membership of either house. (See, Harris v. Capital Growth Investors XIV (1991) 52 Cal.3d 1142, 1157, fn. 6, 278 Cal.Rptr. 614, 805 P.2d 873; People v. Overstreet, supra, 42 Cal.3d 891, 900, 231 Cal.Rptr. 213, 726 P.2d 1288.) However, Senator Presley's letter included a recommendation from the Legislative Counsel of California. Constructions of law made by the Legislative Counsel, like opinions by the Attorney General, "while not binding, are entitled to great weight." (California Assn. Of Psychology Providers v. Rank (1990) 51 Cal.3d 1, 17, 270 Cal.Rptr. 796, 793 P.2d 2, internal quotation and citation omitted.) The Legislative Counsel's Digest provides in part: "This bill would establish, ... the Economic Crime Act of 1992 which would, among other things, provide specified limitations with respect to probation for a defendant convicted of a felony for theft of an amount exceeding $50,000...." Read in conjunction with Senator Presley's letter, the statement appears to be limited to thefts of monetary property.
In the interest of fairness, it should be pointed out that Senator Presley's letter contained enrolled bill reports that are not so clear. (See Dyna-Med, Inc. v. Fair Employment & Housing Com. (1987) 43 Cal.3d 1379, 1399, 241 Cal.Rptr. 67, 743 P.2d 1323 [enrolled bill reports prepared for Governor are indicative of legislative intent in interpretation of statute].) For instance, the enrolled bill report from the *875 Department of Corporations states that that bill "imposes restrictions on granting probation for felony theft convictions exceeding $50,000 in a single transaction or occurrence." The enrolled bill report from the Office of Criminal Justice Planning describes the bill as requiring the courts to deny probation to "persons convicted of felony thefts exceeding $100,000, and to persons convicted of felony thefts exceeding $50,000 if the defendant was previously convicted." These statements appear ambiguous.
On the other hand, the Department of Finance Enrolled Bill Report states the "proposal would specify various penalties for persons who commit an act of `white collar' crime when the value exceeds $50,000 or $100,000...." (Compare Franchise Tax Board Enrolled Bill Report which states the that "when a person is convicted of a felony theft of more than $50,000, a condition of probation would require the criminal to make restitution payments.")
In conclusion, the Legislative history of SB 541 is not very helpful in showing the intent of the Legislature. While the preenactment history, committee reports and analyses, and letter to Governor Wilson favor the view that section 1203.044 was intended to apply to monetary property only, it cannot be said the legislative history is conclusive.

Resolution
It is settled that a "penal statute must define the offense with sufficient precision that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. The constitutional interest implicated in questions of statutory vagueness is that no person be deprived of life, liberty, or property without due process of law, as assured by both the federal Constitution and the California Constitution." (Tobe v. City of Santa Ana (1995) 9 Cal.4th 1069, 1106, 40 Cal.Rptr.2d 402, 892 P.2d 1145, internal quotations and citations omitted.) The defendant is entitled to the benefit of every reasonable doubt, even where it arises out of a question as to the true interpretation of words or the construction of language used in a statute. (People v. Simon (1995) 9 Cal.4th 493, 517-518, 37 Cal.Rptr.2d 278, 886 P.2d 1271.) Thus, when a penal statute is susceptible of two constructions, the one more favorable to the defendant should be adopted. (People v. Davis (1985) 166 Cal. App.3d 760, 766, 212 Cal.Rptr. 673.) Given these basic legal tenets, we can only conclude that if Legislature intends section 1203.044 to apply to the theft of all property with a value of $50,000, it must state its intentions with greater precision.
In conclusion, we hold that because of its ambiguity section 1203.044, subdivision (a) cannot be applied to the theft of trade secrets, and the trial court erred in applying the statute to defendant.

DISPOSITION
The judgment is reversed, and the cause is remanded to the trial court for resentencing.
COTTLE, P.J., and ELIA, J., concur.
NOTES
[1] All further statutory references are to the Penal Code unless otherwise indicated.
[2] Defendant pleaded no contest to one count of trade secret theft. (§ 499c.) Accordingly, the factual background is drawn from the probation report and additional evidence presented at the sentencing hearing.
[3] According to defendant, DEC has since been purchased by Compaq and no longer exists as an independent entity.
[4] According to defendant, a Mexican citizen, he was required to resolve the criminal action before he was granted status as a resident alien or risk permanent deportation proceedings.
[5] Section 499c specifically provides that stealing a trade secret is a "theft."
[6] A letter dated May 13, 1992, from Thomas Nolan (defense counsel in this case) to Jim Provenza, Chief Counsel, Assembly Committee on Public Safety, contained comments on the proposed legislation. Point 5 of the comments observed that "[i]t is not known what `these white collar crimes' are."
[7] The following dates chronicle the legislative history of SB 541:

2/28/91 Introduced
4/30/91 Passed by Senate Committee on
Judiciary (8-0)
1/28/92 Passed by Senate Committee on
Appropriations (10-0)
1/30/92 Passed by Senate floor (35-0)
8/12/92 Passed by Assembly Committee on
Public Safety (5-0)
8/19/92 Passed by Assembly Committee on
Ways and Means (21-0)
8/23/92 Passed by Assembly Floor (74-0)
8/25/92 Passed by Senate Floor, Concurrence
(36-0)
8/25/92 To Enrollment

[8] The original version of SB 541 included such property crimes as burglary, receiving stolen property, car theft, welfare fraud and any and all statutes the violation of which is deemed a theft, embezzlement or forgery.