[Civ. No. 23101.   First Dist., Div. One.   Jan. 9, 1969.]

CALIFORNIA GRAPE AND TREE FRUIT LEAGUE et al., Plaintiffs and Appellants, v. INDUSTRIAL WELFARE COMMISSION et al., Defendants and Appellants.

694

Thomas C. Lynch, Attorney General, and B. Franklin Walker, Deputy Attorney General, for Defendants and Appellants.

Athearn, Chandler & Hoffman, Walter Hoffman, Clark W. Maser, Livingston, Borregard & Grant and Lawrence Livingston for Plaintiffs and Appellants.

ELKINGTON, J.—This case concerns the provisions of the Labor Code[1] (§§ 1171-1398), relating to minimum wages, hours of labor and working conditions of women and minors. Principally it relates to the required procedure when the Department of Industrial Welfare, after investigation, finds that in any occupation, trade or industry, the wages paid women and minors are inadequate, or the hours or conditions of labor are prejudicial to their health or welfare.

Section 1178 provides in such event that the commission "shall select a wage board to consider any of such matters." The wage board must be composed of an equal number of employer and employee representatives in the occupation, trade or industry in question, and a chairman who represents the commission. The wage board is required to consider the matters found by the commission and to "report and make recommendations" to the commission. The wage board report and recommendations shall include (a) an estimate of an adequate minimum wage, (b) the number of hours of work per day consistent with, and (c) the standard conditions of labor necessary for, the health and welfare of such women and minors in the subject occupation, trade or industry. After receipt of the wage board's report and recommendations and before adopting an order relating to wages, hours or conditions of labor, the commission is required to hold at least two public hearings if the scope of the matter be statewide.

Section 1181 provides that upon the fixing of the time and place for public hearings the commission shall advertise and mail notice thereof in a specified manner.

---

[1] Unless otherwise indicated, all statutory citations are to the Labor Code.

Section 1182 states, among other things, that after "the wage board conference and public hearing," the commission may make a mandatory order fixing such minimum wages, maximum hours and standard conditions of labor for the affected women and minors.

In 1962 the commission, after investigation, concluded that, in the industries handling agricultural products after harvest, on and off the farm, the wages paid women and minors were inadequate to furnish the cost of proper living. It also concluded that certain conditions of labor, including the basis for overtime pay, were detrimental to the health, morals and welfare of such employees. The commission thereupon selected a wage board consisting of 10 employer representatives, 10 employee representatives and a chairman.

The wage board considered the matters referred by the commission. Thereafter, on motion of an employer representative that the minimum wage be set at $1 per hour, the employer representatives voted unanimously "yes" while the employee representatives voted unanimously "no." A motion by an employee representative that the minimum be set at $1.50 per hour resulted in the same stalemate. Employer and employee representative motions relating to overtime pay also reached the same result. On each of the motions the chairman abstained from voting for the stated reason that he did not favor any of them. Thereafter the wage board made its report to the commission. Pointed out in detail were the views of the opposing sides, and the fact that they had been unable to agree. It recited "The Chairman refrained from voting on either of these motions, believing that neither of them is well fitted to the balanced interests of the employers and employees in the after-harvest industries in California." No majority recommendations were made.

The commission, after notice, held public hearings in Fresno, Los Angeles and San Francisco. Thereafter it adopted and issued certain orders affecting women and minors in the after-harvest industries. As material here, they provided for a minimum wage of $1.25 per hour for one year until August 30, 1964, and $1.30 per hour thereafter. The pay for overtime work was fixed at one and one-half times, and under some conditions double, the regular (not minimum) wage. These orders modified existing commission orders relating to minimum wages and premium overtime pay for women and minors in the subject industries.

Plaintiffs below represent the growers, packers and shippers of more than 85 percent of California's fresh deciduous fruits. Collectively we shall refer to them as the "League." On behalf of themselves and other persons similarly situated they filed in the superior court a petition for a writ of mandate designed to prevent the enforcement of the above mentioned orders.

After trial the court concluded, among other things: (1) that in the absence of a wage board's majority recommendation the commission lacked power to adopt the orders in question; and (2) that the commission lacked power to adopt orders providing for an immediate minimum wage increase *and* a further increase to take effect as of a future date. The writ of mandate was granted and judgment was entered in favor of the League directing the commission to set aside the orders at issue. The judgment declared, however, that the notice of public hearings, and the public hearings, satisfied "due process of law" and the Labor Code requirements;[2] and that the commission had power to adopt orders providing for premium rates of pay for overtime work and that such authorization was not limited by Labor Code section 1352.

The commission appeals from the judgment. The League cross-appeals from the portions of the judgment declaring that the notice of the public hearings and the hearings satisfied constitutional and legal standards, and that the commission had power to adopt orders providing for premium rates of pay for overtime.

At the outset of our discussion it might be emphasized that the Legislature by section 1178 has cast upon the Industrial Welfare Commission the duty to ascertain the wages paid, and the hours and conditions of labor and employment of, women and minors, and to investigate their comfort, health, safety and welfare. A legislative mandate is then shown by the provision that the commission fix (§ 1182): "(a) A minimum wage to be paid to women and minors engaged in any occupation, trade, or industry in this State, which shall not be less than a wage adequate to supply the necessary costs of proper living to, and maintain the health and welfare of such women and minors. (b) The maximum hours of work consistent with the health and welfare of women and minors engaged in any occupation, trade, or industry in this State.

---

[2] The notice and public hearings were held proper except as they were affected by the lack of any wage board recommendation.

The hours so fixed shall not be more than the maximum now or hereafter fixed by law. (c) The standard conditions of labor demanded by the health and welfare of the women and minors engaged in any occupation, trade, or industry in this State."

Remedial statutes such as those under consideration are to be liberally construed. (*Viles* v. *State of Cal.*, 66 Cal.2d 24, 31 [56 Cal.Rptr. 666, 423 P.2d 818].) They are not construed within narrow limits of the letter of the law, but rather are to be given liberal effect to promote the general object sought to be accomplished. (*Van Wagener* v. *MacFarland*, 58 Cal.App. 115, 118-119 [208 P. 345].) It is fundamental that statutes are to be scrutinized in the light of the legislative intent. (*McKesson* v. *Lowery*, 51 Cal.2d 660, 662 [335 P.2d 662].) And if possible statutes will be so construed as to avoid absurd applications. (*In re Cregler*, 56 Cal.2d 308, 312 [14 Cal.Rptr. 289, 363 P.2d 305].)

Regulations and orders of the Industrial Welfare Commission are presumed to be *reasonable and lawful*. (Lab. Code, § 1200; *Kerr's Catering Service* v. *Department of Industrial Relations*, 57 Cal.2d 319, 330 [19 Cal.Rptr. 492, 369 P.2d 20]; *United Air Lines, Inc.* v. *Industrial Welfare Com.*, 211 Cal. App.2d 729, 750 [28 Cal.Rptr. 238].) And it is noted that Labor Code section 1179 provides: "The commission shall make rules governing . . . the mode of procedure of the wage board, and shall exercise exclusive jurisdiction over all questions as to the validity of the procedure and of the recommendations thereof."

In the light of the principles and rules we have outlined we proceed to examine the contentions of the parties on their respective appeals.

*Appeal of defendant Industrial Welfare Commission*

The commission first contends that the superior court erred in holding that the commission, in the absence of majority recommendations of the wage board, lacked power to adopt the orders in question.

We have discussed the disclosed legislative intent that the commission fulfill its directed duty relating to hours, wages, health, safety and welfare of women and minors employed in this state. Another strong legislative intent is indicated. Before promulgating any pertinent order the commission must have the benefit of the views of interested persons and

organizations in the affected occupation, trade or industry. This intent is manifested by the selective method used in appointing wage boards and by the requirement of public hearings after notice to those most likely to be affected by prospective orders of the commission. As stated in *United Air Lines, Inc.* v. *Industrial Welfare Com., supra,* 211 Cal.App.2d 729, 754, "the commission should not make or change rules until it has had the advice of those skilled in the particular industry and who would know from actual experience the need for and the effect of any particular regulation."

However, having considered the views and advice of interested parties, it is the commission that has the responsibility for adopting such orders as it deems necessary. *The wage board acts in an advisory capacity only.* The commission is free to follow, or reject in whole or in part, its recommendations. (*United Air Lines, Inc.* v. *Industrial Welfare Com., supra,* 211 Cal.App.2d 729, 754-755.)

It should be pointed out that here the commission was well advised as to the views of interested persons by the wage board report and the public hearings. Thus the legislative intent that the commission have the advantage of the views and advice of interested persons and organizations was fulfilled.

We must assume that the Legislature in enacting section 1178 considered the obvious probability that employer and employee wage board representatives would often disagree under circumstances where the chairman could conscientiously agree with neither side.[3] If we concur with the League in its instant contention, we must conclude that the Legislature intended that a wage board's failure to agree would result in the commission's inability to pursue further the statutory goal of proper minimum wages, hours and working conditions for women and minors. This conclusion would place in "advisory" wage boards, often made up of discordant, intransigent factions, the power to nullify the beneficent purpose of the statute. Such a conclusion is unacceptable. It is manifestly unreasonable and contrary to the intent of the Legislature. It approaches absurdity.

Moreover, the previously referred to provisions of Labor Code section 1179 that ". . . The commission shall make rules

[3]In the year in question, wage boards for other than the after-harvest industries were unable to agree and make majority recommendations as to minimum wages in six instances and as to hours of employment in seven instances.

governing . . . the mode of procedure of the wage board, *and shall exercise exclusive jurisdiction over all questions as to the validity of the procedure and of the recommendations thereof''* (italics added), indicate that the commission is free to continue in its statutory purpose regardless of majority wage board recommendations or their absence. So also does section 1182 which, without mention of wage board *recommendations,* provides that the commission may make appropriate orders after ''the wage board *conference* and public hearing.'' (Italics added.)

The League has called to our attention rules of the commission which require majority recommendations of wage boards. While such majority action is, of course, desirable, its absence, as we have pointed out, cannot abridge the statutory grant of jurisdiction to the commission.

*United Air Lines, Inc.* v. *Industrial Welfare Com., supra,* 211 Cal.App.2d 729, is cited by the League in support of its contention. In that case the commission, having found that the welfare of airline stewardesses required that their uniforms be furnished by the airlines, made its order accordingly. Contrary to section 1178 no wage board was called upon to consider the matter; nor were public hearings noticed or held for that purpose. There was thus complete rejection of the statutory requirement that interested members of the airline industry be given an opportunity through a wage board and public hearings to express their views on the subject. The trial and appellate courts quite properly held the order there at issue to be invalid. In the case before us the commission adequately complied with section 1178. It selected a wage board to consider amendments to existing orders and held the required public hearings. *United Air Lines, Inc.* v. *Industrial Welfare Com., supra,* thus does not support the League's argument.

We hold that the failure of a wage board to make majority recommendations does not deprive the commission of power to fix minimum wages, maximum hours and standard conditions of labor in accordance with Labor Code section 1182.

█ The remaining issue of the commission's appeal relates to the trial court's conclusion, and the League's argument, that the commission does not have authority to adopt orders providing for both an immediate increase in the minimum wage and a further increase at a later date.

The pertinent minutes of the commission, of which judicial

notice may be taken (Evid. Code, § 452; *Adoption of McDonnell,* 77 Cal.App.2d 805, 808 [176 P.2d 778]) recite: "The Commission concluded that the minimum wage for women and minors should be $1.30 per hour, to be reached, however, in two steps, $1.25 as of the effective date of the revised orders, and $1.30 one year from that date, to facilitate the adjustment of individual employers to the new minimum wage by softening the impact of the increase." The order as promulgated provided: "(a) Every employer shall pay to each woman and minor employee wages not less than one dollar and twenty-five cents ($1.25) per hour for all hours worked until August 30, 1964, and one dollar and thirty cents ($1.30) per hour for all hours worked on August 30, 1964 and thereafter; . . ."

In reaching its decisions the commission is required to consider the interest of both employer and employee. Here the decision to defer 5 cents per hour of the minimum wage increase for the purpose of "softening the impact of the increase" on the employer seems reasonably within the commission's statutory grant of power. It was the establishment of a minimum wage based on present conditions, not, as contended by plaintiffs, on speculative future conditions. And it was reasonably related to the minimum wage amendment considered by the wage board and at the public hearings.

The point immediately before us seems to be of first instance in this state. However, a closely parallel situation is disclosed in *Application of Wells Plaza Corp.,* 10 App.Div.2d 209, 218 [198 N.Y.S.2d 322, 330], where the court stated: "The appeals board held invalid, also, the provision of the order which established a minimum wage rate of $1 per hour for nonservice, nonresidential employees of all-year hotels outside New York City but deferred its effective date by providing a graduated increase, to 85 cents from January 13, 1958, to 90 cents from July 13, 1958 and to $1 from October 16, 1958. The wage board stated that a fairly large group of up-state employers not now paying the $1 rate would 'require a period of time in which to adjust their wage scales.' The parties seem to agree that an immediate increase would work 'very heavy financial hardship.' By a markedly strained interpretation of the order, the appeals board found that it attempted to fix an immediate minimum rate of 85 cents without regard to the statutory bases, and at the same time to fix future minimum rates without regard to unknown future conditions; and

on this basis the appeals board found the order in contravention of the statute and invalid. It is entirely clear, however, that the minimum rate was presently fixed and was $1; and that the legal question involved is merely as to the propriety of the deferment of the date upon which it should become completely effective. We conceive the test to be that of reasonableness, and we find that the decision was within an area of reasonable administrative discretion into which the reviewing authority may not intrude. There has been no judicial construction of the statute as respects the commissioner's power. There is no express provision to permit or to prohibit a reasonable period for adjustment to a new and sweeping order; and we are unable to say that there was no 'reasonable basis in law' for the commissioner's construction implicit in his order." The rationale of *Wells Plaza* is persuasive and is reasonably applicable to the instant issue.

In approving an order that women employees be not responsible for cash shortages under certain conditions, the Supreme Court of this state in *Kerr's Catering Service* v. *Department of Industrial Relations, supra,* 57 Cal.2d 319, 329-330, pointed out the broad power conferred on California's Industrial Welfare Commission. The court stated: "While it is fundamental in our law that an administrative agency may not, under the guise of its rule-making power, abridge or enlarge its authority or act beyond the powers given to it by the statute which is the source of its power, however, ' "the authority of an administrative board or officer, . . . to adopt reasonable rules and regulations which are deemed necessary to the due and efficient exercise of the powers expressly granted cannot be questioned. This authority is implied from the power granted." [Citations.]' (*California Drive-In Restaurant Assn.* v. *Clark,* 22 Cal.2d 287, 303 [140 P.2d 657, 147 A.L.R. 1028].) [¶] From the foregoing it is obvious that both the Legislature and our courts have accorded to wages special considerations other than merely fixing minimums, and that the purpose in doing so is based on the welfare of the wage earner. As demonstrated, the regulation in the instant case affected conditions of employment, and the commission might well fix such 'standard conditions of labor demanded by the health and welfare of' women and minors. We are aided in this conclusion by the presumptions that regulations of the Welfare Commission are 'reasonable and lawful' (Lab. Code, § 1200), and the recent opinions of this court

upholding the regulations of administrative agencies for which there is no express statutory or constitutional authority. [Citations.]''

We conclude that the commission had power to order the subject minimum wage increase to become effective in two steps, $1.25 per hour on the order's effective date and $1.30 per hour one year later.

*Appeal of plaintiffs*

The League assigns as error the trial court's determination that the commission has power to require premium rates of pay for all time in excess of 8 hours per day or 48 hours per week. They base their contention on Labor Code sections 1350 and 1352, which, while limiting the hours of employment for women, excepts therefrom certain classes including women in the after-harvest industries.

It has long been realized that the hours worked by women concern not only the health and welfare of the workers themselves, but also the public health and general welfare. Thus laws regulating such hours of employment have consistently been upheld. (*Miller* v. *Wilson*, 236 U.S. 373 [59 L.Ed. 628, 35 S.Ct. 342, L.R.A. 1915 F. 829]; *Matter of Application of Miller*, 162 Cal. 687, 694-695 [124 P. 427].) They have constitutional approval. Article XX, section 17½, of California's Constitution, provides ''The Legislature may, by appropriate legislation, provide for the establishment of a minimum wage for women and minors and may provide for the comfort, health, safety and general welfare of any and all employees . . . .''

Overtime pay for women and minors relates but incidentally to wages. Its purpose is to regulate *hours* of employment, insuring that overtime privileges granted employers will not be abused. Premium pay for overtime has for almost 50 years assured reasonable and safe working hours and conditions in certain industries without placing on employers the burden of maximum overtime hours. In 1918, the Industrial Welfare Commission, with respect to the canning industry, reported to the Governor that : ''The double rate after twelve (12) hours has practically eliminated such [overtime] work. This has proved to be more effective than the actual prohibition of long hours.'' (Third Biennial Report of the Industrial Welfare Commission, 1917-1918, pp. 10-11.) It is obvious that such premium pay has a direct and close relation to the legislative mandate to fix the ''maximum hours of work''

(§ 1182, subd. (b)), and the "standard conditions of labor" (§1182, subd. (c)), necessary to the health and welfare of employed women and minors in this state.

Section 1352, relied upon by plaintiffs, provides that the statutory 8-hour day and 48-hour week for women (§1350) does not apply to women in the after-harvest industries. On the other hand, section 1182 states that the commission may fix maximum hours and standard conditions of labor demanded for the health and welfare of women and minors in *"any industry in this State."* (Italics added.) These sections are to be regarded as blending into each other and as constituting but a single statute. (*Pesce* v. *Dept. of Alcoholic Bev. Control,* 51 Cal.2d 310, 312 [333 P.2d 15].) Since they relate to the same subject matter they are in *pari materia;* they must be read together and harmonized wherever possible. (*Channel* v. *Superior Court,* 226 Cal.App.2d 246, 253 [38 Cal. Rptr. 13].)

Construing these code sections together we find the legislative design that women after-harvest workers are exempt from the maximum hours provisions of section 1350, and that the commission may not order otherwise. Nevertheless, the commission may, when reasonably found necessary for the health and welfare of the women concerned, regulate the conditions under which overtime hours are worked. Any other construction would allow uncontrolled long and arduous hours of employment without regard for the health and welfare of the subject women workers—an intent which we are unable to impute to the Legislature.

The result we have reached is supported by the recent case of *Rivera* v. *Division of Industrial Welfare,* 265 Cal.App.2d 576 [71 Cal.Rptr. 739]. There the court was also concerned with Labor Code sections 1350 and 1352. It was stated (pp. 600-601) : "By means of section 1352, the California 8-hour law limiting women workers' overtime excludes coverage of overtime which occurs in the course of processing perishable crops 'when necessary . . . to prevent spoiling.' The Industrial Welfare Commission orders, on the other hand, permit such overtime only at a premium rate of pay. There is no conflict between the statutory exclusion and the commission orders. The exclusion in section 1352 is not designed to guarantee employers the right to demand overtime without limit. It recognizes that the 8-hour limit is not appropriate to the needs of packing establishments handling perishables. On the

other hand, the statutes authorizing Industrial Welfare Commission regulation of maximum hours and labor conditions implicitly recognize the harmful possibilities of unlimited overtime. There is no inconsistency between recognition of the employers' needs and awareness of the employees' risks. Since section 1352 does not guarantee overtime privileges but only excludes overtime from the prohibition, the overtime inhibitions in the commission orders do not conflict with it.''

A similar conclusion was reached by the California Attorney General in an opinion prepared for the commission in 1948. (12 Ops. Cal. Atty. Gen. 319, 322.) Considering the effect of section 1352 the Attorney General advised the commission: ''It is well established that the State may, for the purpose of protecting the health and welfare of women, absolutely prohibit employment beyond a certain number of specified hours. See: *Matter of Application of Miller,* 162 Cal. 687 [124 P. 427]; *Miller* v. *Wilson,* 236 U.S. 373 [59 L.Ed. 628, 35 S.Ct. 342, L.R.A. 1915 F. 829]. As the requirement for an increased hourly wage, after a certain number of hours have been worked, will tend to keep down the number of hours that women will be required to work in the excepted industry, we believe that the provisions to this effect are proper and not unreasonable provisions to be incorporated into the Industrial Welfare Commission Orders.'' Such an opinion of the Attorney General is, of course, not controlling authority, but it is nevertheless of a quasi-judicial character and entitled to great respect. (*Washington Township Hospital Dist. of Alameda County* v. *County of Alameda,* 263 Cal.App.2d 272, 280 [69 Cal.Rptr. 442]; *People* v. *Berry,* 147 Cal.App.2d 33, 37 [304 P.2d 818].)

The League points out that section 1352 fixes overtime pay for women in nursing and certain allied occupations at not less than one and one-half times regular pay. Not fixing such overtime pay for women after-harvest workers, they say, indicates an intent that as to such workers, premium overtime pay may not be required. We do not infer such an intent. Far more reasonable, we believe, is an inference that the Legislature intended, in the complex after-harvest industries, that the commission, after investigation and consideration of the views of interested persons, make the necessary determination of the conditions, and percentage rates, of overtime pay.

The League also argues that the commission may be concerned only with *minimum* wages (§ 1182, subd. (a)),

while the order at issue provides for overtime pay based on *regular* wages. This argument overlooks the purpose of the order—to regulate hours of employment (§ 1182, subds. (b) and (c)) in consideration of the health and welfare of the women and minors concerned. Overtime pay based on minimum rather than actual wages paid would obviously not have the desired effect of discouraging overtime employment. The fact that such an order incidentally affects wages other than minimum does not invalidate it. In the previously cited opinion of the Attorney General (12 Ops. Cal. Atty. Gen. 319, 323), the commission was advised that it "had full authority to enact the provisions in question . . . based on *regular* rate of pay" for women in the after-harvest industries. (Italics added.)

In *Kerr's Catering Service* v. *Department of Industrial Relations, supra,* 57 Cal.2d 319, the court upheld a commission order which under certain circumstances forbade the practice of holding a salesgirl responsible for cash shortages. It had been argued that the order affected wages "above the minimum," a subject with which the commission had no statutory concern. The court stated (pp. 324-325): "Other provisions of the order now engaging our attention, namely Order No. 5-57, which regulates only the Public Housekeeping Industry, which would also be subject to question under this construction are the prohibition on deductions for uniforms, for tools and equipment, *the requirement of time and one-half the regular rate of pay for overtime,* one dollar per day extra for split shift workers, and two dollars for reporting for work if work is not available. *All of these provisions have in common the fact that they 'affect the wage,' but apply regardless of whether or not the employee is making the minimum wage, and are for the purpose of prohibiting or discouraging working conditions prejudicial to the welfare of women and minor employees.*" (Italics added.)

*Rivera* v. *Division of Industrial Welfare,* previously cited 265 Cal.App.2d 576 [71 Cal.Rptr. 739]), also considered the question of premium overtime pay for women based on regular rates. The court stated (pp. 598-599): "Real parties in interest make several attacks against these overtime regulations. One claim is lack of statutory authority. The claim is premised upon the proposition that since premium pay for overtime is calculated upon the regular and not the minimum hourly rate, it affects women employed at rates above the minimum. Labor Code section 1182 empowers the

Industrial Welfare Commission not only to establish minimum wages, but also (in subdivision (b)), to establish maximum hours of work and (in subdivision (c)), standard conditions of labor demanded by the health and welfare of women and minors. These three areas of authority are not mutually exclusive. The commission may, for example, regulate a condition of labor even though it affects wages above the minimum. The imposition of a premium rate for overtime work discourages overtime employment by making it more expensive for the employer. It rests upon the commission's authority to regulate maximum hours and labor conditions and does not rest upon the commission's minimum wage authority. A comparable holding under the Fair Labor Standards Act occurs in *Bumpus* v. *Continental Baking Co.* (6th Cir. 1941) 124 F.2d 549, 551 [140 A.L.R. 1258], cert. den. 316 U.S. 704 [86 L.Ed. 1772, 62 S.Ct. 1305].''

We find no error in the trial court's determination that the commission, under the circumstances of this case, had power to require premium rates of pay for all times in excess of 8 hours per day and 48 hours per week.

The League's remaining contention is that the notice of the commission hearing, and the hearing itself, failed to satisfy ''due process'' requirements of the state and federal Constitutions.

As to the notice of the hearings, the complaint is that interested parties ''had no notice or information as to what specific minimum wage or other proposals were under consideration by the Commission or would be the subject of testimony at the hearings.''

It bears emphasis here that the criticized orders amended existing minimum wage and overtime pay orders covering the subject workers and industries. The commission's notice, among other things, recited that public hearings would be held to take testimony on the matters of *revising, amending,* or rescinding the earlier orders. It provided that: ''Written statements for the consideration of the commission may be filed, preferably in fifteen copies and not later than November 23, 1962 in San Francisco. Statements may be submitted to the commission at the public hearing. Each speaker will be limited initially to five minutes. Additional comments will be allowed as time permits. Where written statements have been presented, it is not necessary to present them orally.'' The notice pointed out that a wage board had been appointed and

that copies of the wage board's report were available for reference at the offices of the commission in 18 designated cities of the state.

The commission is not required to make specific proposals before, or at, the public hearings. (See §§ 1178, 1181, 1182.) When, after investigation, it finds that minimum wages, hours and working conditions are inadequate or prejudicial to the health, morals and welfare of the affected workers, it must appoint a wage board and call public hearings to consider such matters. (§1178.) Indeed, it would be contrary to the clear purpose of the statute for the commission to arrive at specific proposals without benefit of the views and advice of interested persons on the wage board and at the public hearings.

Attacking the sufficiency of the public hearings, the League argues, 1. that "the Commission presented no witnesses or evidence and produced no affirmative case in support of any new or changed wage orders for the after-harvest industries or with respect to any specific proposals concerning overtime premium pay, minimum wages, or an additional increase in the minimum wage in August of 1964"; 2. that no opportunity was afforded for cross-examination of witnesses or rebuttal of commission proposals; and 3. that the commission improperly considered certain "statistical tables concerning hours, wages and other matters specially prepared by the Division of Labor Statistics and Research for the use of the Commission in its consideration, after conclusion of the public 'hearings.'"

As we have pointed out it is not part of the statutory scheme that the commission produce "specific proposals" or an "affirmative case" at its public hearings.

The determination of minimum wages and proper working conditions of women and minors is clearly a matter of legislative concern. (See Cal. Const., art XX, § 17½, quoted *ante*.) The Legislature had delegated this important function to the Industrial Welfare Commission. The proceedings of the commission are thus quasi-legislative. *Franchise Tax Board* v. *Superior Court*, 36 Cal.2d 538, 549 [225 P.2d 905], states: "Where the proceedings are quasi legislative in character, a hearing of a judicial type is not required; a hearing allowed by legislative grace is not circumscribed by the restrictions applicable to judicial or quasi judicial adversary proceedings. [Citations.] . . . There is no constitutional requirement for any hearing in a quasi legislative proceeding. 'Where a rule

of conduct applies to more than a few people it is impracticable that every one should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule. . . .' (*Bi-Metalic Inv. Co.* v. *State Board of Equalization,* 239 U.S. 441, 445 [60 L.Ed. 372, 375, 36 S.Ct. 141].)''

In establishing minimum requirements applicable to the general exercise of quasi-legislative power in the adoption, amendment or repeal of administrative orders, the Legislature has enacted Government Code sections 11420-11427. As to the conduct of legally required public hearings, Government Code section 11425 provides: ''On the date and at the time and place designated in the notice the state agency shall afford any interested person or his duly authorized representative, or both, the opportunity to present statements, arguments, or contentions in writing, with or without opportunity to present the same orally. The state agency shall consider all relevant matter presented to it before adopting, amending or repealing any regulations.'' Nothing in the pertinent provisions of the Labor Code suggests that more exacting requirements should be followed. Indeed, section 1185 provides that in the promulgation of orders such as those before us, the commission is even exempted from the requirements of Government Code section 11425.

In *Rivera* v. *Division of Industrial Welfare, supra,* 265 Cal.App.2d 576, a similar attack was made on the manner in which the commission conducted its public hearings. Rejecting the argument, the court there held that the commission's proceedings were quasi-legislative in nature and that the hearings complied with constitutional and statutory procedural demands.

The League places special emphasis on the consideration by the commission, after the public hearings, of the beforementioned ''statistical tables.'' It states that ''Although written request was made by the League at the outset of the first public meeting at Fresno the Commission failed and refused: (a) to have present or make available at said meetings, either to testify affirmatively or for purposes of exami-

nation by petitioners, any of the experts and staff members of the Commission or of the Division of Labor Statistics and Research, who prepared or compiled said statistical studies, surveys and other data considered by the Commission in promulgating said orders; or (b) to place in evidence at said meetings, by specific introduction and identification at the meetings, or to allow cross-examination and presentation of rebuttal evidence by petitioners with respect to, any of the studies, surveys and data, or a summary of the results of same, proposed to be relied upon by the Commission in adopting said orders.''

It is noted that the statistical tables in question, or the information on which they were based, were substantially, if not in their entirety, reasonably available as public information.

Considering a like argument as to the use of such statistical material by the commission, the court in *Rivera, supra,* 265 Cal.App.2d 576, 589-590, stated: ''When the evidentiary material consists of private facts rather than public conditions or a special investigation conducted for the purpose of the particular determination and is not generally available to the public during the hearing process, its incorporation in the hearing record may be an indispensable condition of fairness. Other evidence deals with public conditions rather than private facts and is so generally available that fairness does not demand its display in the administrative record, for any percipient party may acquire and use it by analysis and research in advance of the hearing. Evidence of the latter sort frequently takes the form of statistical compilations and of economic and social studies, some published by federal and state agencies, others issued under the aegis of educational institutions or chambers of commerce but available through standard research sources such as libraries and public document depositories. Published studies of this sort are available to all who care to collect and use them. Even in the relatively strict precincts of judicial inquiry, published research material on social and economic conditions is habitually used without entering it in evidence, without putting the author under oath or cross-examining him. It is equally available to assist the process of administrative legislation. An impeccably arranged process would incorporate all such material before or during the hearings and announce its presence to all, thus avoiding dissatisfaction, protest and legal attack. Reviewing courts,

however, are concerned with minimum procedural demands. No unfairness occurs when the agency makes use of published research material which is available to the public generally.''

We have examined the authorities cited by the League in support of the instant contentions. These cases principally concern situations where the agency was required to follow more stringent statutory requirements of notice and hearing (*Ray* v. *Parker,* 15 Cal.2d 275 [101 P.2d 665]); or after denial of a petition, an agency without notice or hearing reversed its order (*Olive Proration etc. Committee* v. *Agricultural etc. Committee,* 17 Cal.2d 204 [109 P.2d 918]); or the administrative order was not reasonably related to the subject of the notice or hearing (*United Air Lines, Inc.* v. *Industrial Welfare Com., supra,* 211 Cal.App.2d 729); or where the hearing was quasi-judicial in nature (*Ohio Bell Tel. Co.* v. *Com.,* 301 U.S. 292, 304 [81 L.Ed. 1093, 1101, 57 S.Ct. 724]; *United States* v. *Abilene & So. Ry. Co.,* 265 U.S. 274] 68 L.Ed. 1016, 44 S.Ct. 565] ; *Interstate Commerce Com.* v. *Louisville & Nashville R.R.,* 227 U.S. 88 [57 L.Ed. 431, 33 S.Ct. 185]; *English* v. *City of Long Beach,* 35 Cal.2d 155 [217 P.2d 22, 18 A.L.R.2d 547]). We consider none of them to have authoritative bearing on the problem before us.

We conclude that the commission's notice of hearings, and the hearings held pursuant thereto, sufficiently complied with the statute and were not violative of any legitimate concept of due process.

The judgment is reversed. The superior court, on appropriate findings, will enter judgment for appellants and respondents Industrial Welfare Commission and Division of Industrial Welfare of the Department of Industrial Relations of the State of California. Each of the parties will bear its costs on appeal.

Molinari, P. J., and Sims, J., concurred.