TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 86-804 |
| of | : | APRIL 1, 1987 |
| JOHN K. VAN DE KAMP<br>Attorney General | : | |
| CLAYTON P. ROCHE<br>Deputy Attorney General | : | |

_____


THE HONORABLE HERSCHEL ROSENTHAL, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following questions:

1.  If a local government which operates a transit system leases rapid transit vehicles for that system, does section 4500 of the Government Code require that such vehicles be accessible for the handicapped?

2.  If a local government which operates a transit system contracts with a private transportation company for what is referred to as transportation "services" and not transportation "equipment," does section 4500 of the Government Code require that rapid transit vehicles used in such "services" be accessible for the handicapped?

1

CONCLUSIONS

1. If a local government which operates a transit system leases rapid transit vehicles for that system, section 4500 of the Government code does require that such vehicles be accessible for the handicapped.

2. If a local government which operates a transit system contracts with a private transportation company for what is referred to as transportation "services" and not transportation "equipment," section 4500 of the government Code does require that rapid transit vehicles used in such "services" be accessible for the handicapped.

ANALYSIS

In 1968, the Legislature enacted legislation to require that all public buildings and facilities constructed with public funds be accessible to and usable by the physically handicapped. (Gov. Code, § 4450 et seq., as added by Stats. 1960, ch. 261.)[1] This particular legislation, however, was not broad enough in its terms to include public transportation equipment. (See Cal. Atty. Gen. Letter Opn., I.L. 69-169.)

Shortly thereafter, at the behest of the California Labor Federation,[2] the Legislature enacted section 4500 of the Government Code specifically applicable to public transportation facilities and equipment. (Stats. 1971, ch. 444.) That section as enacted provided and still provides as follows:

"Notwithstanding the provisions of any statute, rule, regulation, decision or pronouncement to the contrary, every local governmental subdivision, every district, every public and quasi-public corporation, every local public agency and public service corporation, and every city, county, city and county and municipal corporation, whether incorporated and not whether chartered or not, *in awarding contracts for equipment or structures*

---

[1] Complementary legislation applicable to public accommodations or facilities constructed with private funds was enacted by the Legislature the following year. (See Health & Saf. Code, § 19955, as added by Stats. 1969, ch. 1560).

See also Civil Code section 54 et seq., originally enacted in 1968 (Stats. 1968, ch. 461) according blind and other physically handicapped persons equal rights in and to public places, accommodations and facilities.

[2] See, e.g., Enrolled Bill Memorandum To Governor, dated July 29, 1971, with respect to A.B. 710, 1971 Legislature.

See also, "Resolutions - Part 1," Eighth Convention, California Labor Federation, ALF-CIO, August 1970, Res. No. 62, at p. 28.

2

86-804

*shall be obligated to require that all rapid transit equipment and structures shall be so built that a handicapped person shall have ready access to, from and in such equipment and structures*; provided, however, that contracts for equipment and structures incidental to the operation of an urban transit system shall be exempt from this requirement until such equipment shall be available from not less than two manufacturers." (Emphasis added.)

With respect to the language of section 4500 which is underscored above, we have been presented with two questions for resolution.

The first question presented is whether the underscored language applies to the situation where a local government which operates a transit system leases rapid transit vehicles for that system.

The second question presented is whether that language applies to the situation where a local government which operates a transit system contracts with a private transportation company for what is referred to as transportation "services" and not transportation "equipment." In this latter situation, the contract would provide that the private transportation company, for an agreed upon consideration, would operate its own rapid transit vehicles with its own operators over routes to be designated by the local governmental unit. No franchise, however, would be involved. The contracted for transportation "services" would constitute the local government's transportation system. Does section 4500 of the Government Code require that rapid transit vehicles used in such "services" be accessible for the handicapped?

With respect to both questions, we conclude that section 4500 requires that the vehicles involved be accessible for the handicapped.

Returning to the language of section 4500 of the Government Code, we note first that it is applicable to public and not private agencies. It then imposes upon those public agencies certain requirements in their "awarding contracts for equipment and structures." Since our focus herein is on vehicles, we will concern ourselves only with the award of "contracts for equipment."

Significantly, the statutory language "awarding contracts for equipment" does not specify what *types* of contracts are contemplated by the statute. The words "contracts for equipment" taken by themselves could encompass numerous types of contracts such as contracts to purchase, lease, use, insure, repair and even dispose of equipment. Accordingly, our task herein is to resolve the ambiguity in such language in accordance with what we perceive to have been the intent of the Legislature in enacting section 4500.

3

We believe this ambiguity is resolved when one examines the requirements of section 4500 with respect to the "awarding of contracts for equipment" by the enumerated public agencies. These are that 1) "all rapid transit equipment" 2) "shall be so built" that 3) "a handicapped person shall have ready access to, from and in such equipment." In our view, these specifications demonstrate that the legislative purpose in enacting section 4500 was to ensure that handicapped persons can *use* public transit equipment the same as able-bodied persons can. Accordingly, to ensure that this legislative purpose is carried out, we believe that the words "contracts for equipment" as used in section 4500 should be construed to include all contracts pertaining to rapid transit equipment which contemplate the *use* of that equipment in the contracting public entity's transit system.

This construction is buttressed by the following language of the California Supreme Court where that court, in a somewhat different context, discussed the general policy reasons for the enactment of legislation such as section 4500 of the Government Code. Thus, in *In re Marriage of Carney* (1979) 24 Cal.3d 725, 738, the court stated:

> ". . . [T]he physical handicapped have made the public more aware of the many unnecessary obstacles to their participation in community life. *Among the evidence of the public's change in attitude is a growing body of legislation intended to reduce or eliminate the physical impediments to that participation, i.e., 'the architectural barriers' against access by the handicapped to buildings, facilities, and transportation systems used by the public at large.* (See, e.g., Gov. Code, § 4450 et seq. [requires handicapped access to buildings and facilities constructed with public funds]; Health & Safety Code, § 19955 et seq. [access to private buildings open to the general public]; *Gov. Code, § 4500 [access to public transit systems]*; Pub. Resources Code, § 5070.5 subd. (c) [access to public recreational trails]; see also Veh. Code, §§ 22507.8, 22511.5 et seq. [special parking privileges for handicapped drivers].)" (Emphasis added.)

Additionally, in resolving this ambiguity in section 4500, we are guided by certain rules of statutory construction. "Modern social legislation is generally regarded as being remedial in nature." (3 Sutherland, Statutory Construction (4th Ed. 1986), 60.02, p.61.) Section 4500 of the Government Code certainly meets this characterization. In the relatively early case, *In re Makinos* (1927) 200 Cal. 474, 478-479, the California Supreme Court, quoting with approval from 23 Cal.Jur. 801, stated the rule with respect to the interpretation of remedial statutes as follows:

> ". . . 'It is well settled that a remedial statute must be liberally construed, so as to effectuate its object and purpose. Although due regard

4

will be given the language used, such an act will be construed, when its meaning is doubtful, so as to suppress the mischief at which it is directed, and to advance or extend the remedy provided, and bring within the scope of the law every case which comes clearly within its spirit and policy. Clearly, the remedial effect of provisions should not be impaired by construction, . . ." (23 Cal.Jur. 801.) . . ."

Or as stated more recently in *Alford* v. *Pierno* (1972) 27 Cal.App.3d 682, 688:

". . . 'Remedial statutes such as [the one] under consideration, are to be liberally construed. [Citation.] They are not construed within narrow limits of the letter of the law, but rather are to be given liberal effect to promote the general object sought to be accomplished. [Citation.]' (*California Grape etc. League* v. *Industrial Welfare Com.* (1969) 268 Cal.App.2d 692, 698 [74 Cal.Rptr. 313].)"

Having construed the purpose of section 4500 to be to ensure that handicapped persons may *use* rapid transit equipment utilized in a public transit system, and considering the foregoing rules of statutory construction, we now address the specific question presented.

The first question presented asks whether rapid transit vehicles which are leased by a local public agency for use in its transit system must be accessible for the handicapped under section 4500.

The answer to this question is clearly "yes." Although the main thrust of section 4500 would be to the purchase of rapid transit vehicles as the usual method of acquisition, there is nothing in the language of section 4500 which restricts its application to purchases. Under our construction of section 4500, its requirements are applicable to *any* type of acquisition of rapid transit vehicles which are to be used in a public transit system. It is immaterial whether or not the public agency owns the vehicles. Their *use* in the system is the controlling factor under section 4500.

Accordingly, on question one we conclude that where a local government which operates a transit system leases rapid transit equipment for use in that system, section 4500 requires that such vehicles be accessible for the handicapped.

The second question presents a rather different factual situation. In that question we are not presented with the situation where the local public agency actually acquires rapid transit equipment in the usual sense, whether by purchase, lease or otherwise, and has physical dominion and control over the vehicles. We are presented

5

with the situation where the local public agency contracts with a *private* transportation company for transportation "services" and not "equipment."  Does section 4500 apply to such a contract?

Again, we conclude the answer is "yes."  This conclusion also follows from our construction of section 4500, that is, that it is applicable to *any* contract awarded which pertains to rapid transit equipment and which contemplates the *use* of that equipment in a public transit system.  Thus, it is immaterial who owns or even *operates* such equipment, whether it is the public entity or the private transportation company.  Furthermore, such a conclusion is virtually compelled to ensure that the object and purpose of the legislation is not thwarted.  A handicapped person will have the same access problems with *public* transit whether the equipment is operated by a public employee, or is operated by a private employee whose services are hired *and paid for by the public*.  As noted at the outset, the main legislative purpose to be gleaned from the wording of section 4500 is that the handicapped be able to *use* rapid transit equipment provided to the public by a public transit system.  The foregoing conclusion accords with that purpose.

Accordingly, as to question number two we conclude that if a local government which operates a transit system contracts with a private transportation company for what is referred to as transportation "services" and not transportation equipment, section 4500 of the Government Code does require that rapid transit vehicles used in such "services" be accessible for the handicapped.[3]

*****

---

[3] In reaching this conclusion we note the possible argument that section 4500 would not apply to *existing* equipment of the private transportation company.  This argument would arise from the fact that section 4500's requirements are phrased in the future tense ("shall be obligated to require"; "shall be so built"; "shall have ready access to").  In essence, the argument would conclude that section 4500 only applies to equipment *to be built* at some future time pursuant to the awarding contract.

We reject this argument, since, as we have pointed out, section 4500 is not concerned with actually building the equipment, but is concerned with assuring that all contracted for equipment is designed and accordingly physically built for *use* by the handicapped.  The actual time the equipment was built would be immaterial.  The time the contract is awarded by the *public* agency is the significant and governing factor.

As to the use of the future tense in section 4500, we believe this was in all probability used to indicate that the public agencies to which the section applies could use their existing equipment.  Stated otherwise, we believe the section was worded so that *public* agencies would not be required to retrofit existing equipment when the statute was enacted.  Such a "grandfather" clause would not apply to equipment owned by a private transportation company.

6

86-804