[No. F012565. Fifth Dist. Sept. 6, 1990.]

HARRIS FEEDING COMPANY, Plaintiff and Appellant, v. DEPARTMENT OF INDUSTRIAL RELATIONS, Defendant and Respondent.

466

**COUNSEL**

Jory, Peterson & Sagaser, John T. Seyman and Howard A. Sagaser for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Richard R. Finn and Marguerite C. Stricklin, Deputy Attorneys General, for Defendant and Respondent.

**BEST, ACTING P. J.—**

### INTRODUCTION

The Department of Industrial Relations, Division of Labor Standards Enforcement (hereafter DLSE) is charged with enforcing occupational and industry-wide wage orders that are promulgated by the Industrial Welfare Commission (hereafter IWC) pursuant to Labor Code[1] section 1171 et seq. The IWC has promulgated two wage orders, Wage Orders 4-80 and 14-80, whose applicability to the instant case are in issue. According to DLSE, Wage Order 4-80 applies to the wages, hours and working conditions of all persons employed in professional, technical, clerical, mechanical and similar occupations unless such person performs the occupation in an industry that is covered by an IWC industry order. Wage Order 14-80 allegedly applies to agricultural occupations that similarly are not covered by IWC industry Wage Orders 8-80 and 13-80.[2] Order 4-80 requires that clerical employees be paid overtime after working eight hours per day. Order 14-80 does not require overtime pay until after the employee works 10 hours per day.

### HISTORICAL BACKGROUND

In *Industrial Welfare Com.* v. *Superior Court* (1980) 27 Cal.3d 690 [166 Cal.Rptr. 331, 613 P.2d 579], the court gave the following brief historical background:

"The IWC is a five-member appointive board initially established by the Legislature in 1913. For the first 60 years of its existence, the IWC's mission was to regulate the wages, hours and conditions of employment of *women and children* employed in this state, in furtherance of such employees' 'health and welfare.' To this end, the commission—beginning in 1916— promulgated a series of industry- and occupation-wide 'wage orders,' pre-

---

[1] All statutory references are to the Labor Code unless otherwise indicated.

[2] Wage Order 8-80 governs industries handling products after harvest. Wage Order 13-80 governs industries preparing agricultural products for market, on the farm.

scribing various minimum requirements with respect to wages, hours and working conditions to protect the health and welfare of women and child laborers. For many decades, IWC wage orders have embraced a variety of subjects comparable in scope to the 1980 wage orders at issue in this case.

"In the early 1970s, a number of federal judicial decisions invalidated a substantial portion of the then-prevailing IWC wage orders on the ground that the limited application of such orders to *women* workers (and children) violated the prohibition on sex discrimination embodied in title VII of the federal Civil Rights Act of 1964. (See, e.g., *Rosenfeld* v. *Southern Pacific Co.* (9th Cir. 1971) 444 F.2d 1219, 1225-1227; *Homemakers, Inc., Los Angeles* v. *Division of Indust. Welf.* (N.D.Cal. 1973) 356 F.Supp. 1111, affd. (9th Cir. 1974) 509 F.2d 20, cert. den. (1976) 423 U.S. 1063 [46 L.Ed.2d 655, 96 S.Ct. 803]; and cases cited, 509 F.2d at p. 23, fn. 7.) In response to these federal decisions, the California Legislature in 1972 and 1973 amended the applicable provisions of the Labor Code to authorize the IWC to establish minimum wages, maximum hours and standard conditions of employment for *all* employees in the state, men as well as women. (Stats. 1972, ch. 1122, §§ 2-6, pp. 2153-2155; Stats. 1973, ch. 1007, §§ 1.5-4, pp. 2002-2003.) The constitutionality of this legislative expansion of the IWC's jurisdiction to all California workers is explicitly confirmed by article XIV section 1 of the California Constitution which declares: 'The Legislature may provide for minimum wages and for the general welfare of employees and for those purposes may confer on a commission legislative, executive and judicial powers.'

"Although the 1973 modification of the IWC's jurisdiction to encompass men as well as women and minors clearly worked a substantial expansion in the number of workers affected by the commission's orders, and, as a practical matter, was probably a major impetus to the host of litigation that has surrounded the commission's wage orders since 1973, the 1973 legislation did not alter the basic nature of the IWC's decision-making authority or the basic principles governing judicial review of the commission's exercise of that authority. From its inception in 1913 to the present, the commission has been vested with broad statutory authority to investigate 'the comfort, health, safety, and welfare' of the California employees under its aegis (§ 1173, enacted Stats. 1913, ch. 324, § 3, p. 633) and to establish (1) '[a] minimum wage . . . which shall not be less than a wage adequate to supply . . . the necessary cost of proper living and to maintain the health and welfare of such [employees],' (2) '[t]he maximum hours of work consistent with the health and welfare of [such employees]' and (3) '[t]he standard conditions of labor demanded by the health and welfare of [such employees]

. . .' (§ 1182, enacted Stats. 1913, ch. 324, § 6, pp. 634-635.)" (*Industrial Welfare Com.* v. *Superior Court, supra,* 27 Cal.3d at pp. 700-701, fn. omitted.)

## STATEMENT OF THE CASE

On October 11, 1985, DLSE issued a standard enforcement letter to plaintiff, Harris Feeding Company, advising that it had received information that plaintiff was not paying its clerical employees daily and weekly overtime after eight hours of work per day or forty hours per week, as required by Wage Order 4-80. DLSE requested that plaintiff conduct a payroll audit and provide it with a status report within 45 days.

On December 12, 1985, plaintiff filed a complaint for declaratory and injunctive relief, seeking a declaration that the wages, hours and working conditions of its clerical employees are governed by Wage Order 14-80, and that the IWC should have promulgated Order 14-80 as an industry order. Plaintiff also sought an injunction prohibiting defendants from applying Wage Order 4-80 to its clerical employees and from subjecting plaintiff to civil and criminal proceedings for failing to comply with the provisions of Order 4-80. Plaintiff also sought attorney fees pursuant to Code of Civil Procedure section 1021.5. Subsequently, on September 7, 1988, plaintiff filed an amended complaint with a third cause of action. In the third cause of action, plaintiff basically alleged that Order 14-80's statement as to basis is inadequate, and that the adoption of Order 14-80 as an occupational order rather than as an industry-wide order was arbitrary, capricious and lacking in evidentiary support.

Following trial by way of stipulated facts and documentary exhibits, objection to which were made in posttrial briefs, on June 15, 1989, the trial court issued its statement of decision and judgment. The court held that plaintiff's clerical employees are governed by the provisions of Order 4-80 and found that the statement as to basis for Order 14-80 did not violate section 1177. The court also found that the promulgation of Order 14-80 as an occupational order was not arbitrary, capricious, or lacking in evidentiary support. The statement of decision emphasized that the court could not ignore the plain language and historical background of Orders 4-80 and 14-80. Since plaintiff did not prevail, the court found plaintiff was not entitled to attorney fees.

## STATEMENT OF FACTS

The IWC has determined that "industry" orders apply vertically to every classification of employee within the industry regardless of the type of work

he or she does. Employees not working in an industry covered by an industry order may be covered by an "occupational" order.

On May 3, 1918, the IWC set forth minimum wages and working conditions for women and minors working "in any office." This order was later succeeded by Order 4R in 1947, and was the first in the line of occupation Orders "4," to and including Order 4-80. Each of these Orders "4" was intended to apply to all clerical employees who happen to work for an agricultural business.

Like Orders "4," the IWC has enacted and DLSE has enforced Orders "14," including 14-80, as occupational orders applicable only to specified agricultural occupations since 1961. Every Order "14" was described as governing employment "in agricultural occupations." Except for Order 14-76, each of these orders sets forth a list of specific occupations to which the order is applicable, and none specifies or has been deemed applicable to clerical employees.

In 1978, in accordance with section 1173, the IWC began to consider revising its 1976 wage orders and started the process for promulgating Orders 4-80 and 14-80. The IWC held a public meeting on September 18, 1978, where it adopted its statement regarding the scope of industries and occupations to be considered by the wage boards.[3] The statement provided, among other things, that Wage Board 4 would consider professional, technical, clerical, mechanical and similar occupations, and that Wage Board 14 would consider agricultural occupations relating to the maintenance of soil, building and machinery, which constitute the basic farm facilities as well as the cultivation of farm commodities up through harvest.

On February 6 and 7, 1979, the wage board for Order 14 met in Los Angeles. IWC provided the members of the board the specific agricultural occupations that were within the scope of its deliberations and it was advised that while the IWC had a duty to consider their recommendations, it was not bound by them. The report of Wage Board 14 was issued on March 9, 1979, and it contained a unanimous recommendation that the definition of agricultural occupations be enlarged from the list of described occupations provided to them by the IWC to include the following language: " 'or other occupations or operations performed by a farmer or on a farm as an incident to or in conjunction with such farming operations.' "

---

[3] A wage board is a statutorily mandated advisory body selected by the IWC to advise it, and is made up of an equal number of representatives from employers and employees. (See § 1178 et seq.)

Pursuant to section 71.1, the IWC met in executive session nine times between June 14 and 29, 1979, to deliberate on the evidence all the wage boards had presented. Pursuant to section 1171 et seq., the IWC held six public hearings throughout the state between August 13 and 27, 1979, to receive comments on its proposals for revising the 1976 wage orders.

Pursuant to section 71.1, the IWC met again in executive session on August 28-29 and September 5, 1979, to discuss the evidence presented at the hearings. At a public hearing held on September 7, 1979, the IWC adopted revised Wage Orders 1-80 through 15-80.

DISCUSSION

I

DID IWC WAGE ORDER 14-80 SUBSTANTIALLY REVISE IWC WAGE ORDER 14-76 SO AS TO REQUIRE A STATEMENT AS TO BASIS FOR SUCH A REVISION?

█ Plaintiff contends that Order 14-80 substantially revised Order 14-76 so as to require an adequate statement as to basis pursuant to section 1177. (See also *California Hotel & Motel Assn.* v. *Industrial Welfare Com.* (1979) 25 Cal.3d 200, 213-214 [157 Cal.Rptr. 840, 599 P.2d 31].) Defendant counters that there was no substantial change. The trial court's conclusion that no substantial change was made is supported by the record.

As noted in the statement of facts, the language of Orders 14 defining the agricultural occupations covered has remained virtually unchanged since 1961. The exception was Order 14-76 which, instead of providing a list of described occupations, provided as follows: "(C) 'Agricultural occupations' means all services necessary to farming in all of its branches, and includes maintenance of machinery or other facilities, and the planting, cultivating or growing, keeping for sale, harvesting, transporting on the farm or to the place of first processing, any tree, plant, animal, fowl, fish, insect or products thereof."

Plaintiff apparently contends that this broad definition covered agricultural clerical employees. From this premise, plaintiff argues that the IWC's reversion to the old definition describing the occupations covered, which does not include clerical employees, is a substantial revision requiring a statement as to basis. The folly in plaintiff's argument is the unsupported assumption that Order 14-76 was intended to apply to agricultural clerical employees. The IWC has consistently maintained that all agricultural cleri-

cal employees have, in the past and in the present, fallen within the provisions of Order 4. Plaintiff does not cite to any judicial or administrative decision that has ever interpreted Orders 14, including 14-76, to include agricultural clerical employees. As stated in *Industrial Welfare Com.* v. *Superior Court, supra*, 27 Cal.3d 690, at page 730, "the commission's interpretation of the statutes which it administers is entitled to great weight, and, in our view, the employers have not demonstrated a sufficient basis for rejecting the commission's interpretation of this provision."

While it can be argued that Order 14-76 was at least ambiguous as to whether it included clerical employees, such an ambiguity should, as the trial court apparently did below, be resolved against plaintiff's proposed construction. Simply stated, the historical background of Orders 4 and 14 make it absolutely clear that agricultural clerical employees are covered by Order 4. Given this history, it is reasonable to assume that if the IWC had intended to include agricultural clerical employees in Order 14-76 it would have done so with specific language. This is especially true since the language of Order 4-76 remained unchanged. Absent any indication in the record or in the legislative history of the enactment of Wage Order 14-76 that it was intended to include agricultural clerical employees, it is not reasonable to so conclude. Therefore, the trial court could reasonably and properly conclude that the definition provided in Order 14-76 was not intended to expand the definition of agricultural employees to include agricultural clerical employees.

In *Industrial Welfare Com.* v. *Superior Court, supra*, 27 Cal.3d at page 715, the court pointed out as follows: "When the commission, on the basis of its investigation, wage board proceedings and public hearings, determines that an existing regulation should be altered or a new regulation promulgated, section 1177 requires that the commission explain the reason for the new or revised rule. When the commission concludes that no such modification is warranted, however, no comparable explanation is necessary, for the commission is simply continuing in effect a regulation that has previously become a part of the standard working conditions of 'employees in the modern society.' (§ 1173.)"

In *California Manufacturers Assn.* v. *Industrial Welfare Com.* (1980) 109 Cal.App.3d 95 [167 Cal.Rptr. 203], at page 108, the court held that "the factual burden of demonstrating that prior protections are no longer appropriate for employees in a modern society should be on the party who contends that conditions have changed."

In the instant case, it is clear that agricultural clerical employees have always been covered by Orders 4 and that Order 4-80 did not revise Order

4-76. Plaintiff has failed to show that Order 14-76 was intended to preempt Order 4-76 or that the prior protections of Orders 4 were no longer appropriate. Therefore, the trial court could properly conclude that since there was no substantial revision of the definition of the occupations covered, no statement as to basis for the promulgation of Order 14-80 was required.

## II

### IS THE IWC'S DECISION TO CLASSIFY WAGE ORDER 14-80 AS AN OCCUPATIONAL ORDER RATHER THAN AN INDUSTRY ORDER ARBITRARY AND CAPRICIOUS OR LACKING IN EVIDENTIARY SUPPORT?

█ The California Supreme Court in *Industrial Welfare Com. v. Superior Court, supra*, 27 Cal.3d 690 has provided the following standard for appellate review of the IWC's wage orders: "Judicial authorities have repeatedly emphasized that in fulfilling its broad statutory mandate, the IWC engages in a quasi-legislative endeavor, a task which necessarily and properly requires the commission's exercise of a considerable degree of policy-making judgment and discretion. [Citations.]

"Because of the quasi-legislative nature of the IWC's authority, the judiciary has recognized that its review of the commission's wage orders is properly circumscribed. As the Court of Appeal noted in *Rivera, supra*, 265 Cal.App.2d 576, 594 [71 Cal.Rptr. 739]: 'A reviewing court does not superimpose its own policy judgment upon a quasi-legislative agency in the absence of an arbitrary decision; rather, the review is limited to an examination of the proceedings to determine whether the action is arbitrary or entirely lacking in evidentiary support or whether the agency has violated the procedure required by law; in these technical matters requiring the assistance of experts and the collection and study of statistical data, courts let administrative boards and officers work out their problems with as little judicial interference as possible.' (Fn. omitted.)

"Moreover, past decisions additionally teach that in light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection. As the court observed in *California Grape etc. League, supra*, 268 Cal.App.2d 692, 698 [74 Cal.Rptr. 313]; 'Remedial statutes such as those under consideration [i.e., the statutes governing the adoption of wage orders] are to be liberally construed. [Citation.] They are not construed within narrow limits of the letter of the law, but rather are to be

given liberal effect to promote the general object sought to be accomplished . . . . [¶] Regulations and orders of the Industrial Welfare Commission are presumed to be *reasonable and lawful.*' (Italics in original.)" (*Industrial Welfare Com.* v. *Superior Court, supra,* 27 Cal.3d at pp. 702, 703.)

■ Applying the above standard, we conclude that plaintiff has failed to show that the IWC's decision to classify Wage Order 14-80 as an occupational order rather than as an industry order is arbitrary and capricious or lacking in evidentiary support. Plaintiff's main argument that agriculture is and has been recognized as an industry rather than an occupation falls far short of what is required before this court may declare the IWC's decision was arbitrary.

Plaintiff's preoccupation with the proper characterization of the business of agriculture as an industry misses the point. For years employees in the business of agriculture have consistently been governed by at least two different wage orders. Since 1947, agricultural clerical employees have been governed by Order 4-80 and its predecessors. Similarly, for years employees in the business of agriculture who handle produce after harvest have been governed by two other separate orders—Orders 8-80 and 13-80 and their predecessors. Thus, the existence of four separate IWC orders that deal with distinct aspects of agricultural operations reveals the absurdity of plaintiff's argument that all employees *must* be governed by Order 14-80. Because Orders 8-80 and 13-80 are themselves industry-wide orders and because Order 14-80 specifically excludes coverage of employees covered by Orders 8-80 and 13-80, the provisions of Order 14-80, even if it were designated an industry order, would still not encompass the operations governed by Orders 8-80 and 13-80. By parity of reasoning, the provisions of Order 4-80 should not be preempted by Order 14-80.

In other words, while agriculture may properly be described as an industry, such a description has nothing to do with the IWC's specific terminology regarding industry orders and occupational orders. Again it must be noted that there is no doubt from the instant record that Order 14-80 is not applicable to clerical employees. Clerical employees are clearly not included in the list of employees in the definitions section of Order 14-80. Similarly, the record is replete with specific language, including the titles of Orders 14, that clearly establishes that the IWC intended Order 14-80 to be an occupational order. The mere fact that agriculture might best be described as an industry does nothing to show that the IWC's determination to classify Order 14-80 as an occupational order was somehow arbitrary. The real question remains whether there are any compelling reasons to remove agricultural clerical employees from coverage under Order 4-80 to coverage

under Order 14-80. No such compelling reasons have been advanced by plaintiff and, therefore, it cannot be said that the IWC's failure to make that change is arbitrary. Rather, since there is no evidence to the contrary, the presumption that the IWC's orders are reasonable and lawful must come into play. (*Industrial Welfare Com.* v. *Superior Court*, *supra*, 27 Cal.3d at p. 703.)

## III

### SHOULD THIS COURT DECLARE THAT AGRICULTURAL CLERICAL EMPLOYEES ARE COVERED BY IWC ORDER 14-80 RATHER THAN ORDER 4-80?

In a related argument, plaintiff contends that the fact that the IWC did not amend the provisions of Order 14-80 to apply to agricultural clerical employees was arbitrary and capricious. Plaintiff also requests that this court judicially declare that Order 14-80 is an industry order, and that the IWC be required to apply it to all employees in agricultural business.

In essence, plaintiff argues that the IWC acted arbitrarily and capriciously when it rejected Wage Board No. 14's recommendation that the definition of agricultural occupations be expanded to include, in addition to the designated occupations, " 'other occupations or operations performed by a farmer or on a farm as an incident to or in conjunction with such farming operations.' " This motion was included in both the Wage Board No. 14 report and the working summaries of 1976 orders, which staff prepared and provided to the commissioners for their use in deliberating on the 1980 orders. Thus, it is clear that the proposed language was considered before it was rejected. However, this rejection cannot be deemed to have been arbitrary or capricious.

It is important to note that at the time of the promulgation of the 1980 orders, the recommendations of the wage boards were not binding on the members of the IWC. (§ 1178; *California Grape etc. League* v. *Industrial Welfare Com.* (1969) 268 Cal.App.2d 692, 699 [74 Cal.Rptr. 313].)[4] In addition, the motion went outside Wage Board No. 14's charge, which provided a list of designated agricultural occupations in the statement to the wage board members regarding the scope of the wage board's commission.

Contrary to plaintiff's contention, the fact that Wage Board 14's recommendation was based on the unanimous vote of its members does not

---

[4] The Legislature added new section 1178.5 effective January 1, 1981, to require that the commission shall propose regulations that receive the support of at least two-thirds of the members of the wage board. The orders at issue herein were promulgated prior to the effective date of this amendment.

automatically make the IWC's rejection of the motion arbitrary or capricious. Because the recommendation of the board was not binding, the IWC retained the discretion to reject it. Rather, the focus of the inquiry must be whether there was any rational basis for the IWC to disagree with the recommendation. But in the first instance, assuming the recommendation of the wage board was intended to include clerical employees under Order 14-80,[5] this recommendation should have come with compelling reasons, such as a change in facts or conditions, to justify expanding the scope of coverage. Since it did not, it should not be surprising that the IWC rejected the recommendation without any explanations.

More important, however, is the fact the IWC has consistently sustained and enforced the same position for over 40 years—that overtime for agricultural clerical employees is governed by the 8-hour day standard in Order 4-80. This fact alone should be sufficient to establish some rational justification for the IWC's position. In requesting that this court find the IWC's action to be arbitrary and capricious, plaintiff is asking this court to come to the absurd conclusion that requiring payment of overtime after eight hours is somehow not rational. Of course, overtime after eight hours is not only rational, but the eight-hour day is well entrenched in the labor history of California and the United States. For these reasons, plaintiff's contention should be rejected.

In view of the IWC's clear intent to the contrary, a declaration by this court that plaintiff's clerical employees are covered by Order 14-80 would be a classic example of a reviewing court's superimposing its own policy judgment over that of the IWC. Such action would be contrary to the clearly defined role that a reviewing court has in reviewing the decisions of the IWC, as set forth by our Supreme Court in *Industrial Welfare Com.* v. *Superior Court, supra,* 27 Cal.3d at pages 702-703.

---

[5] Nothing in the instant record tends to suggest that the board's recommendation was intended to include clerical employees within the scope of Order 14-80. Indeed, the inference from the record is to the contrary. Most of the votes on the motions considered by Wage Board 14 were divided six to six, presumably in line with the makeup of the board of six employee representatives and six employer representatives. In addition, an employee member made a motion, seconded by another employee member, to change the current order so that *all* agricultural employees would be paid overtime after eight hours of work. This motion was defeated by a six-to-six vote. This leaves little doubt that if the employee members of the board had understood that the broad language they approved would have the effect of increasing the hours of the agricultural clerical employees before overtime pay kicked in, they would not have voted for it.

## IV

### Is Plaintiff Entitled to Attorney Fees Pursuant to Code of Civil Procedure Section 1021.5?

Plaintiff's contention that it is entitled to attorney fees pursuant to Code of Civil Procedure section 1021.5 must be rejected. The basic requirement for awarding attorney fees under that section is that they be awarded to "a successful party."

### Disposition

The judgment is affirmed. Respondent to have its costs on appeal.

Vartabedian, J., and Brown (G. A.), J.,* concurred.

A petition for a rehearing was denied October 2, 1990, and appellant's petition for review by the Supreme Court was denied November 20, 1990.

---

* Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.